[No. A091181. First Dist., Div. Two. Apr. 5, 2001.]

ROBERT S. KOLODGE, Plaintiff and Appellant, v.
MICHAEL E. BOYD, Defendant and Respondent.

352

**COUNSEL**

Lanahan & Reilley, Martin Reilley and Cheryl P. Martinsen for Plaintiff and Appellant.

Gaglione & Dolan and Robert T. Dolan for Defendant and Respondent.

**OPINION**

**KLINE, P. J.**—Plaintiff Robert S. Kolodge appeals from the summary judgment granted in favor of defendant Michael E. Boyd in an action for damages for negligence and negligent misrepresentation in appraising certain real property. Appellant contends the trial court erred in concluding he made a "full credit bid" at a nonjudicial foreclosure sale, because the amount of his bid was less than the total outstanding mortgage debt. In the alternative, appellant maintains that even if he made a full credit bid, the full credit bid rule as construed by the California Supreme Court in *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226 [44 Cal.Rptr.2d 352, 900 P.2d 601] does not as a matter of law bar his causes of action for negligence and negligent misrepresentation, as the trial court found. Appellant argues, finally, that the trial court also erred in finding he did not reasonably rely on respondent's allegedly negligent misrepresentation at the time he entered his bid, as there is a triable issue as to that material fact.

We shall conclude there is a triable issue as to whether appellant entered a full credit bid, and for that reason reverse the judgment and remand the matter. We shall also determine that, if it is properly determined that appellant made a full credit bid, the full credit bid rule would not bar his claims unless he did not reasonably rely on respondent's appraisal in entering his bid at the foreclosure sale, and, as to that issue, we find the trial court erred in finding no triable issue of disputed fact.

## FACTUAL AND PROCEDURAL BACKGROUND

Between May 20, 1992, and June 2, 1993, appellant made a series of three loans to Yvonne Power in the total amount of $660,000. The first loan, evidenced by a promissory note secured by real property owned by Power located at 7071 and 7059 Bucktown Lane in Vacaville, was made on May 20, 1992, for $400,000. On May 18, 1992, a few days before appellant made the initial loan, respondent appraised 7071 Bucktown Lane as having a value of $800,000 and 7059 Bucktown Lane as having a value of $1 million. The $400,000 loan was in second position on 7059 Bucktown Lane behind a first mortgage of approximately $850,000 held by First Republic Bank. The $400,000 loan was also secured by 7071 Bucktown Lane, and was in first position on that property. On October 27, 1992, appellant loaned Power an additional $80,000, which was secured by 7071 and 7059 Bucktown Lane. In June 1993, appellant made a third loan to Power of $180,000, which was also secured by the two Bucktown Lane properties and was in a junior position to his prior two loans. The complaint alleges appellant relied on respondent's 1992 appraisals when making all three loans.

Power defaulted on all three notes and ultimately filed for bankruptcy protection on September 1, 1995. In a declaration, appellant stated that at the time Power filed for bankruptcy "she owed me a total in excess of $1 million, comprised of $660,000 in principal plus interest, late charges, and $108,678.51 I paid to senior lienors and or property tax obligations, in order to protect my junior secured position" plus other expenses he incurred in order to maintain the property and "protect the value of my security." During the course of the bankruptcy proceedings appellant moved to lift the bankruptcy stay so that he could foreclose on the security properties. In December 1995 appellant's counsel in the bankruptcy proceeding sought and obtained a new appraisal of the Bucktown Lane properties from Palmer, Groth & Pietka, Inc., a licensed real estate appraiser. This appraisal stated that the current combined value of both properties as of November 1995 was $985,000, substantially less than respondent's earlier $1.8 million valuation of the two properties. Appellant testified at deposition that he paid for this appraisal, and that he was "shocked" when at some unspecified time he received a copy. The record is unclear whether appellant introduced and relied on the new appraisal in the bankruptcy proceeding.

In February 1996, appellant foreclosed on the third loan of $180,000. A trustee's sale was held on February 28, 1996. The "Trustee's Deed Upon Sale" states that the unpaid debt on the note at issue was $180,000, that appellant was the foreclosing beneficiary, that he was the highest bidder, and that the $180,000 he paid was "in full satisfaction of the indebtedness then secured by said Deed of Trust."

Appellant commenced this litigation on February 27, 1997, by filing a complaint asserting causes of action against respondent and others for negligence and misrepresentation. Less than a month later respondent filed a motion for summary judgment, asserting that, under the decision of the California Supreme Court in *Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th 1226, "[t]he decision by [appellant] to enter a full credit bid on the $180,000 loan as a matter of law precludes his claiming damages against [respondent]." After hearing argument, the trial court granted the motion. The court's ruling stated that appellant "made a full credit bid. . . . [and] [t]herefore, causes of action for negligence and misrepresentation are precluded." The ruling went on to note that appellant's action was also barred because his "alleged reliance on the 1992 appraisal was unreasonable in light of the subsequent appraisal . . . ." The trial court determined that appellant "has not demonstrated that a triable issue of fact remains to any cause of action against [respondent]."

## DISCUSSION

The threshold question is whether appellant made a full credit bid. If he did, the remaining questions are whether his causes of action for negligence and misrepresentation are foreclosed either because *Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th 1226 only permits a lender who made such a bid to sue a third party tortfeasor for fraud (not negligence or negligent misrepresentation), or because appellant did not rely on respondent's appraisals in making his full credit bid, as required by *Alliance Mortgage.*

## I.

### The Standard of Review

A trial court ruling on a motion for summary judgment is subject to de novo review. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766]; *Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1506-1507 [82 Cal.Rptr.2d 368].) Our review is limited to the facts shown in the affidavits supporting and opposing the motion and the uncontested factual allegations set forth in the pleadings. In this court, as in the trial court, the moving party's affidavits are strictly construed, and the opponent's affidavits are liberally construed. Due to the drastic nature of summary judgment, any doubts about the propriety of granting the motion must be resolved in favor of the party opposing the motion. (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177]; *Stationers Corp. v. Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d

1071, 1083 [258 Cal.Rptr. 721].) While we review a summary judgment ruling under the same general principles applicable at the trial level, we must independently determine the construction and effect of the facts presented to the trial court as a matter of law. (1 Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2000) ¶ 8:165, p. 8-95 et seq. and cases there cited.)

## II.

### *The Evidence Does Not Satisfactorily Establish That Appellant Made a Full Credit Bid.*

■ "At a nonjudicial foreclosure sale the lender-beneficiary is entitled to make a credit bid up to the amount of his indebtedness, since it would be pointless to require the bidder to tender cash that would only be immediately returned to him. (Civ. Code, § 2924h, subd. (b); *Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 607 [125 Cal.Rptr. 557, 542 P.2d 981].) A credit bid equal to the amount of the unpaid principal and interest, plus the costs, fees and other expenses of the sale, is known as a 'full credit bid.' (*Id.* at p. 606, fn. 10.) When the lender purchases the property by making a full credit bid, he effectively is paid the full amount of the debt; consequently, the debt is satisfied and the lien is extinguished. (Civ. Code, § 2910; *Passanisi* v. *Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1503 [236 Cal.Rptr. 59]; *Duarte* v. *Lake Gregory Land and Water Co.* (1974) 39 Cal.App.3d 101, 104-105 [113 Cal.Rptr. 893].) This is true as well for a foreclosing junior lienholder. That is, when the junior lienholder makes a full credit bid and acquires the property at the trustee's sale, the debt secured by the junior lien is satisfied and the lien is extinguished. (*Ballengee* v. *Sadlier* (1986) 179 Cal.App.3d 1, 5 [224 Cal.Rptr. 301]; see *Caruso* v. *Great Western Savings* (1991) 229 Cal.App.3d 667, 674 [280 Cal.Rptr. 322]). However, the junior lienholder, like any other successful purchaser, takes the property subject to the senior lien. (*Davidow* v. *Corporation of America* (1936) 16 Cal.App.2d 6, 11-12 [60 P.2d 132]; see *Brown* v. *Copp* (1951) 105 Cal.App.2d 1, 6-8 [232 P.2d 868].)" (*Romo* v. *Stewart Title of California* (1995) 35 Cal.App.4th 1609, 1614 [42 Cal.Rptr.2d 414], fn. omitted.)

Acknowledging the interrelationship between foreclosure and antideficiency statutes (*Alliance Mortgage Co.* v. *Rothwell, supra,* 10 Cal.4th at p. 1236), the Supreme Court designed the full credit bid rule to ensure the integrity of nonjudicial foreclosure sales insofar as such sales may relate to the debtor protection policies of the antideficiency statutes. The rule makes a properly conducted nonjudicial foreclosure sale the dispositive device through which to " 'to resolve the question of value and the question of

potential forfeiture through competitive bidding . . . .' " (*Cornelison v. Kornbluth, supra,* 15 Cal.3d at p. 607.) A lender who enters a full credit bid is deemed to have irrevocably warranted that the value of the security foreclosed upon was equal to the outstanding indebtedness and not impaired. (*Id.* at p. 606.) Because the secured obligation has been totally satisfied, there is no deficiency that can be sued upon. The effect of the rule is to foreclose claims against the borrower that might be allowed by the antideficiency statutes, such as a claim for bad faith waste, if the measure of damages sought is the amount of the alleged impairment of the lender's security.

It is necessary to keep in mind that the idea that the full credit bid rule represents—that such a bid constitutes an admission as to the genuine value of the security property—is a legal fiction. As the United States Supreme Court has pointed out, bids at foreclosure sales often bear little relationship to the fair market value of security property (*BFP v. Resolution Trust Corp.* (1994) 511 U.S. 531, 538 [114 S.Ct. 1757, 1761, 128 L.Ed.2d 556] [" 'fair market value' presumes market conditions that, by definition, simply do not obtain in the context of a forced sale."].) While the fiction serves a useful purpose as between a lender and a borrower, because it is a useful way in which to enforce the policies reflected in the antideficiency statutes, it can be very troublesome when applied in other contexts, as this case shows.

It should also be noted that a lender-beneficiary is not required to make a full credit bid, and may bid whatever he or she believes the property is worth. Apparently, many creditors enter low credit bids to provide access to additional security or funds. (*Cornelison v. Kornbluth, supra,* 15 Cal.3d at p. 607.) According to one commentator, "[b]eneficiaries involved in trustee sales are often tempted to make full credit bids because [Code of Civil Procedure] § 580d prohibits a deficiency judgment after a trustee sale in any event . . . , so nothing of value seems to be lost by such a bid. And the ability to outbid others (because of the right to bid credit rather than cash) increases the prospect of acquiring the asset and reselling it later at a gain if its value was originally underestimated. Furthermore, it is mechanically easier merely to instruct the auctioneer to enter a one-time bid equal to the amount demanded for payoff of the debt rather than instructing the auctioneer to make an opening underbid and incrementally raise the bid if necessary." (1 Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar. 3d ed. 2000) § 2.67, p. 95.)

The danger in making a full credit bid is that it may foreclose certain postsale remedies by the lender-beneficiary against not only the borrower but also third parties. For example, in *Cornelison v. Kornbluth,*

*supra*, 15 Cal.3d 590, the court stated that a full credit bid had to be considered "a total satisfaction of the secured obligation," and the lender-beneficiary therefore gave up its right to recover damages for bad faith waste from the trustor. (*Id.* at p. 606.) In *Alliance Mortgage v. Rothwell, supra,* 10 Cal.4th 1226, the only other Supreme Court opinion discussing the full credit bid rule, the court held that a lender induced by the fraud of third parties to make loans could recover tort damages from such parties for their fraud provided, however, that the lender could show that the fraud induced not just the loans but also the full credit bid.

██ The trial court found that the $180,000 bid appellant made at the foreclosure sale constituted a full credit bid because the Trustee's Deed Upon Sale stated that the unpaid debt was $180,000, and that appellant's high bid in that amount was "in full satisfaction" of the indebtedness secured by the deed of trust. Appellant challenges this finding on separate grounds, which we discuss in turn.

## A.

Appellant first argues that the statement in the Trustee's Deed Upon Sale that the amount of the unpaid debt was $180,000 was contradicted by other evidence, and that a triable issue of material fact was therefore presented.[1] Appellant submitted a certified copy of the notice of default on the $180,000 note advising the borrower that as of April 24, 1995, the amount of her indebtedness on the note had increased to $358,893.39 due to accrued interest, late charges, payments to senior lienholders and other expenses incurred by appellant in order to protect his secured interest.[2] Because the amount of the unpaid debt on the $180,000 note at the time of

---

[1]In his opening brief appellant precedes this argument with the claim that the Trustees Deed Upon Sale should not have been received in evidence because there was no showing it was a business record or otherwise exempt from the hearsay rule. So far as we can determine from the record, appellant's only "objection" at trial to the receipt of the deed in evidence was the bare assertion in his separate statement of facts in opposition to the motion for summary judgment, that he objected to the document "as being hearsay and pursuant to the best evidence rule." Though this issue was raised by appellant's counsel at the hearing on the motion for summary judgment, she never requested, either in writing or orally, that the trial court rule on the evidentiary objections alluded to in the separate statement of facts in opposition to the motion for summary judgment, and the trial court never made any such ruling. Because there was no such request and no ruling, the objections are deemed waived and not preserved for appeal. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670 fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207]; *City of Long Beach v. Farmers & Merchants Bank of Long Beach* (2000) 81 Cal.App.4th 780 [97 Cal.Rptr.2d 140].)

[2]In his reply brief in support of his motion for summary judgment, respondent objected to this evidence on the ground it was filed later than 14 days preceding the date of the hearing on the motion for summary judgment and was therefore untimely under Code of Civil Procedure section 437c, subdivision (b), because appellant did not show and the trial court did

the foreclosure sale was contested and in doubt, appellant argues, it presents a triable issue of material fact, rendering the grant of summary judgment improper.

Respondent's answer to appellant's evidence as to the increased amount of the debt is that it is "irrelevant." According to respondent, the only relevant evidence to be considered is the amount of the debt as of February 28, 1996, the date of the trustee's sale, and as to that question the only evidence before the court was the Trustee's Deed Upon Sale, which shows that the debt was then $180,000. We are unimpressed with this contention. As just noted, there was conflicting evidence as to the amount of the debt at the time of the trustee's sale. While recitals in the trustee's deed of compliance with all requirements of law pertaining to the notice of default and notice of sale constitute "conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice" (Civ. Code, § 2924), that is not the type of recital respondent relies upon. No statute, and no case of which we have been made aware, bars a party from rebutting a recital in a trustee's deed pertaining to the amount of unpaid debt at the time of the trustee's sale by evidence showing that the amount was different from that stated in the deed prepared by the trustee, in this case a title insurance company.[3] Moreover, the undisputed allegation of the complaint that the borrower defaulted on all of the notes also casts doubt on the accuracy of the statement in the trustee's deed that the unpaid debt at the time of the sale was the face amount of the note, which presupposes all interest payments had been timely made. As noted, the drastic nature of summary judgment renders it improper to grant such relief when any doubt exists as to whether a triable issue of material fact is presented. (*Stratton v. First Nat. Life Ins. Co., supra,* 210 Cal.App.3d 1071, 1083.) As there is such doubt in this case, the grant of summary judgment was error.

not find good cause for the delay. In his brief in this court respondent argues that we should ignore this evidence not only because it was untimely but also because "the trial court either disregarded the [evidence] or gave it little weight, as is evident from its final ruling." However, like appellant's failure to seek and obtain a ruling on his objection to the receipt in evidence of the Trust Deed Upon Sale, respondent never requested a ruling on his objection, and the trial court never made one. Therefore, based on the case law cited in the preceding footnote, the objection is deemed waived and not preserved for appeal.

[3]Indeed, even recitals regarding notice that are "conclusive evidence" in favor of bona fide purchasers and encumbrancers for value and without notice only constitute "prima facie evidence" of compliance with notice requirements as to all others. It has been held that presumed facts arising from a recital in a trustee's deed may be overcome by evidence showing an invalid postponement of the sale and a nonexistent trustee's sale to a lienholder who was not a bona fide purchaser. (*Wolfe v. Lipsy* (1985) 163 Cal.App.3d 633, 639-640 [209 Cal.Rptr. 801], disapproved on another ground in *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 36 [283 Cal.Rptr. 584, 812 P.2d 931].) It has also been held that a trustor is not prevented from proving that no default existed at the time of the sale by a recital to the contrary in a trustee's deed. (*Brown v. Busch* (1957) 152 Cal.App.2d 200, 204 [313 P.2d 19].)

## B.

Appellant also argues that the indebtedness that must be considered in determining whether he made a full credit bid is not just that evidenced by the $180,000 note, but also the debt under the two other notes (one in the amount of $400,000 and another in the amount of $80,000) also secured by the property he foreclosed upon, so that a full credit bid cannot be found to have been made in this case even if the bid was in the amount of the unpaid debt on the $180,000 note. The complaint describes the three loans and the pertinent promissory notes, and alleges that all were secured by the Bucktown Lane properties, and that the borrower defaulted on each loan. Appellant also introduced a declaration under penalty of perjury he had filed in the borrower's bankruptcy proceeding showing that in January 1996 her indebtedness to appellant on the three secured loans was then "in excess of $1,000,000, comprised of $660,000 in principal plus interest, late charges, and $108,678.51 [appellant] paid to senior lienors and or property tax obligations, in order to protect [his] junior secured position," as well as various maintenance expenses assertedly necessary to protect the value of appellant's security. On the basis of these allegations—none of which are disputed—appellant maintains his $180,000 bid "should not have been treated as a full credit bid on a million dollar debt."

Respondent's contention that the loans cannot be considered collectively rests on *Romo v. Stewart Title of California, supra,* 35 Cal.App.4th 1609. In that case, the plaintiff assisted in the financing of the sale of her home by loans to the buyer of $12,300 and $18,470 secured by second and third deeds of trust, respectively. When no payments were made on the promissory notes, the plaintiff exercised her power of sale under the third deed of trust and instituted nonjudicial foreclosure proceedings. At the sale she entered a bid of $20,363, which represented the full amount of the loan secured by the third deed of trust ($18,700) plus interest and costs. After she acquired the property the plaintiff listed it for sale. By that time, however, the loan from a bank secured by the first deed of trust was also in default. The bank gave the plaintiff notice of the default and, after she failed to pay the arrearages or take any other steps to avoid foreclosure, foreclosed on the property. The plaintiff sued Stewart Title and others who allegedly induced her to sell her home and arranged the transaction, alleging fraud, conversion and the negligent performance of fiduciary duties. The court found these causes of action foreclosed by the plaintiff's full credit bid. "Within the context of foreclosure of a junior lien, plaintiff's full credit bid is presumed to establish the value of the *total indebtedness*, since plaintiff took the property subject to the first and second deeds of trust. Had plaintiff believed the value of the property was insufficient to support both senior liens, plaintiff was not

obligated to make a full credit bid. . . . Had plaintiff entered a bid for $12,300 less than the amount owing to her on the $18,470 note, then plaintiff would not be precluded from recovering the $12,300 remaining due. [Citations.] By her full credit bid, however, plaintiff accepted the property as being equal to the indebtedness." (*Id.* at pp. 1617-1618, italics added.)

As appellant points out, the opinion in *Romo v. Stewart Title of California* ignores and conflicts with the earlier opinion in *Evans v. California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540 [33 Cal.Rptr.2d 646], which appellant urges us to follow. In *Evans*, seller-beneficiaries held two trust deeds on the same real property, each securing a separate note for $300,000. The beneficiaries reacquired the property at a nonjudicial foreclosure sale of the senior deed of trust with a credit bid equal to the unpaid debt secured by that deed but less than the full amount of indebtedness secured by the two deeds of trust. The Court of Appeal agreed with the plaintiffs that this was not a full credit bid. "The trustee's deed reflects that at the nonjudicial foreclosure sale plaintiffs paid, presumably by credit bid, $314,901.67, the exact amount of the unpaid debt secured by the senior deed of trust. From the allegations in the pleadings we infer that the second note for $300,000 was, at least in large part, unpaid. Thus, immediately prior to the foreclosure sale the total outstanding indebtedness was approximately $600,000, nearly twice the actual amount of plaintiffs' credit bid. Nevertheless, both in the lower court and on appeal defendants characterize plaintiffs' bid as a 'full credit bid.' That characterization necessarily assumes one of two possible premises—either that the only obligation owing was that secured by the senior trust deed or that the amount of the bid should somehow be deemed increased to include the amount owing on the junior encumbrance. We see no reason in law or logic for making either assumption." (*Evans, supra,* 28 Cal.App.4th at pp. 554-555.)

Neither the court in *Romo* nor that in *Evans* addresses the underlying issue presented in those cases, and in this one, which is the applicability of the doctrine of merger. Implicit in *Romo*, though not stated in the opinion, is the conclusion that when the beneficiary took title to the property after the trustee's sale the remaining lien on that property held by the beneficiary was extinguished by the merger of the lien with the title. This implied application of the doctrine of merger seems unjustified. ■ It is true that "[w]henever a greater estate and a lesser estate in the same parcel of real property are held by the same person, without an intermediate interest or estate, the lesser estate generally merges into the greater estate and is extinguished." (4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10:41, p. 130, citing *Sheldon v. La Brea Materials Co.* (1932) 216 Cal. 686, 689 [15 P.2d 1098]; *Carpenter v. Pacific States S. & L. Co.* (1937) 19 Cal.App.2d 263, 268-269 [64 P.2d

1102].) However, while a lien may be extinguished when title is conveyed to the beneficiary, "[t]he union of a lesser and greater estate does not always result in a merger. *The doctrine of merger is applied only where it prevents an injustice and serves the interests of the person holding the two estates, in the absence of evidence of a contrary intent.* It is not applied where it results in an injustice, injury, or prejudice to a third person. [¶] Where one person holds title to the real property security and the beneficial interest in a deed of trust, and there is a junior lien, a court may give equitable relief to prevent a merger when the beneficiary's best interest would be served by preventing a merger, the purposes of justice would be served, and the junior lienor cannot prove by a preponderance of the evidence that the beneficiary intended a merger." (4 Miller & Starr, Cal. Real Estate, *supra*, § 10:41, at p. 131, italics added, fns. omitted.) As the Supreme Court stated in *Alliance*, "merger of the lien and ownership of the property in one person or entity extinguishes the lien, *unless it is necessary for the protection of the buyer's rights that the lien be sustained.*" (*Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th 1226, 1235, italics added, citing *Ralph C. Sutro Co. v. Paramount Plastering, Inc.* (1963) 216 Cal.App.2d 433, 438 [31 Cal.Rptr. 174].)

Whether there has been a merger depends not just on the equities, but also the intent of the parties, which presents a question of fact. (*Sheldon v. La Brea Materials Co., supra*, 216 Cal. 686, 692; *Strike v. Trans-West Discount Corp.* (1979) 92 Cal.App.3d 735, 742-743 [155 Cal.Rptr. 132].) While it is presumed that there is no merger where merger would work an inequity, the presumption against merger can be overcome by evidence that the parties intended a merger upon the union of two or more estates, and as to this question the person claiming merger has the burden of proof. (*Strike v. Trans-West Discount Corp., supra*, 92 Cal.App.3d at p. 743.)

 The record provides no reason the liens and obligations relating to appellant's $400,000 and $80,000 loans should be deemed to have merged in the title appellant acquired at the trustee's sale, because that would shield a third party from liability for tortious conduct, which would defeat the rights of the buyer and be inequitable. For this reason, an intent of the parties to the notes that merger would not occur should be implied. (*Ito v. Schiller* (1931) 213 Cal. 632, 635 [3 P.2d 1] [" 'In the absence of an expression of intention, if the interest of the person in whom the several estates have united, as shown from all the circumstances, would be best subserved by keeping them separate, the intent so to do will ordinarily be implied.' "].)

The notes here at issue were not presented to the trial court and are therefore not before us. On remand, the trial court may apply the doctrine of merger only on a showing that the notes themselves or some other writing

reflect an express intent of the parties to the notes that the liens merge with title to the security properties. While it is unlikely respondent can make such a showing, the possibility cannot be foreclosed. However, the trial court will need to consider and resolve this issue only if it is first determined that appellant's $180,000 bid was equal to the unpaid debt on the promissory note in that amount. If at the time of the trustee's sale the indebtedness on that note can be shown to have been greater than the amount of appellant's bid at the foreclosure sale the question of merger will, of course, be moot.

## III.

### *Appellant's Causes of Action Are Not Precluded by Alliance Mortgage Co. v. Rothwell.*

*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th 1226 holds that a lender's acquisition of secured property by full credit bid at a nonjudicial foreclosure sale does not bar the lender as a matter of law from maintaining a fraud action against third party nonborrowers who fraudulently induced the lender to make the loans. The trial court appears to have concluded that *Alliance* applies only to fraud claims, and that appellant's full credit bid therefore precludes his causes of action for negligence and negligent misrepresentation. We disagree.

*Alliance* was an action by a real estate lender against a real estate appraiser and broker, a title insurer, and others, alleging, among other things, that the defendants fraudulently induced the plaintiff to make loans to purchasers of real property. The trial court granted motions to strike portions of the complaint, concluding that the plaintiff's full credit bids for the properties at the nonjudicial foreclosure sales barred claims for damages resulting from fraudulent representations as to the adequacy of the security, and entered judgment on the pleadings for the defendants. This court reversed. As the Supreme Court noted in its opinion, we expressly disagreed with *Western Fed. Savings & Loan Assn. v. Sawyer* (1992) 10 Cal.App.4th 1615 [13 Cal.Rptr.2d 639] and *GN Mortgage Corp. v. Fidelity Nat. Title Ins. Co.* (1994) 21 Cal.App.4th 1802 [27 Cal.Rptr.2d 47], which supported the trial court ruling in *Alliance,* but which we thought were wrongly decided. In unanimously affirming our judgment the *Alliance* court described our reasoning: "[The Court of Appeal] reasoned that a 'full credit bid does not establish the value of the property for all purposes, but only for the purpose of foreclosure proceedings against a borrower,' and hence had no application to claims against third party tortfeasors. [The Court of Appeal] concluded that '[t]he central error of *Western Federal, supra,* and *GN Mortgage, supra,* is the failure to appreciate that because the full credit bid rule was conceived

only to further the debtor protection purposes of the antideficiency statutes, it has no application in actions against parties not sued as debtors. The statement in *GN Mortgage* that the rule is simply "concerned with damages and proximate causation" and "is independent of the antideficiency statute" [citation] is wrong. It is inconceivable the Supreme Court anticipated the rule it announced in *Cornelison* would be used to insulate third party tortfeasors from liability for fraudulent conduct, as was done below.' " (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1245.) Implicit in the language the Supreme Court used in affirming our opinion in *Alliance* is that a rule designed to protect debtors from the untoward effects of an economic downturn should not be extended to insulate nondebtor tortfeasors from liability.

 Although the *Alliance* court decided only that full credit bids do not as a matter of law bar claims for fraudulent misrepresentations as to the adequacy of the security, because the petition for review was granted "solely" on that issue (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1234), which was the only issue the court needed to decide, the rationale of *Alliance,* as well as the authorities the court relied upon, strongly suggest such bids also do not as a matter of law bar any other tort claims against third parties who are not borrowers or the successor in interest to a borrower.

After reviewing certain background principles regarding mortgages and deeds of trust, the discussion in *Alliance* commences with a description of the "elaborate and interrelated set of foreclosure and antideficiency statutes relating to the enforcement of obligations secured by interests in real property." (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1236.) Most of these statutes, the court observed, "were enacted as a result of 'the Great Depression and the corresponding legislative abhorrence of the all too common foreclosures and forfeitures [which occurred] during that era for reasons beyond the control of the debtors.' [Citation.]" (*Ibid.*) The court noted, however, that while these statutes "have been broadly interpreted to protect the debtor," they "do not preclude an action against a borrower for fraud in the inducement of a loan." (*Id.* at p. 1237.) There are three reasons for this exception. "First, '[a] suit for fraud obviously does not involve an attempt to recover on a debt or note. As such, it stands separate and apart from any action which the antideficiency legislation seeks to preclude.' [Citations.] 'Furthermore, the antideficiency laws were not intended to immunize wrongdoers from the consequences of their fraudulent acts. Finally, assuming that the court applies a proper measure of damages, fraud suits do not frustrate the antideficiency policies because there should be no double recovery for the beneficiary.' [Citation.]" (*Id.* at pp. 1237-1238.) *Alliance* discusses the liability for fraud of a borrower, which was established by *Guild Mortgage Co. v. Heller* (1987) 193 Cal.App.3d 1505, 1508

[239 Cal.Rptr. 59], to show how anomalous it would be to bar such a claim against a nonborrower.

Everything the *Alliance* court said about fraud can also be said about appellant's negligence claims. A suit for negligence is as separate a remedy from a suit on a promissory note secured by a deed of trust as a suit for fraud. The antideficiency statutes were no more designed to immunize parties from liability for negligence than they were designed to protect anyone from the consequences of fraud. Like suits for fraud, negligence actions against nondebtors will not result in double recovery for the creditor if a proper measure of damages is applied, and such actions therefore also do not frustrate antideficiency policies. It is also worth noting that appellant does not assert that respondent's conduct impaired his security or caused its value to decrease after the loans were made, and the damages he seeks are therefore not measured by such a yardstick. Appellant's claim, like that of the appellant in *Alliance*, is that respondent's misrepresentations "induced [him] to make loans that far exceeded the [security] properties' actual worth *at the time the loans were made*, and that as a result of these misrepresentations [he] purchased the properties. In other words, [respondent] did not damage or impair [appellant's] security interest; rather [respondent] deceived [appellant] at the outset as to what that security was." (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1249, italics in original.) As the *Alliance* court emphasized, "[t]his is a wholly different claim from that which we considered in *Cornelison*. Once again, just as a suit for fraud against a borrower 'is a completely separate remedy than a suit on the promissory note secured by the deed of trust,' and hence not barred by the antideficiency statutes [citation], a lender's suit against its fiduciaries or agents for fraudulently inducing it to make loans and purchase property is a completely separate cause of action from a suit for impairment of its security." (*Ibid.;* see also *Foggy v. Ralph F. Clark & Associates, Inc.* (1987) 192 Cal.App.3d 1204, 1214 [238 Cal.Rptr. 130].) What the *Alliance* court said about a suit for intentional misrepresentation can be said with equal force about a suit for negligent misrepresentation. The measure of damages for an injury resulting from such tortious conduct would not offend any of the policies embodied in the antideficiency statutes.[4]

Like the antideficiency statutes, the full credit bid rule is not concerned about the relationship between the lender and third parties but only the

---

[4]The fact that it has yet to be determined whether respondent stood in a fiduciary relationship to appellant, which might bear upon the precise measure of damages under Civil Code section 3333 (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1249; see also *Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555 [29 Cal.Rptr.2d 463], 564-568), does not justify the grant of summary judgment. This uncertainty also existed in *Alliance,* where the Supreme Court found it sufficient that, as here, the lender at least sought out-of-pocket damages "when it alleges that it paid more for the properties than they were worth, and incurred certain consequential damages. [Citation.] Accordingly, its full credit bids

relationship between the lender and the borrower or a successor whose interests are also subject to the lien of a mortgage. As stated in *Alliance*, when the property is acquired through a full credit bid, "the lender pays the full outstanding balance of the debt and costs of foreclosure to itself and takes title to the security property, releasing *the borrower* from further obligations under the defaulted note." (*Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th at p. 1238, italics added.) The *Alliance* court explained the purpose of the full credit bid rule by reiterating the statement in *Smith v. Allen* (1968) 68 Cal.2d 93, 96 [65 Cal.Rptr. 153, 436 P.2d 65] that "it is clear that the Legislature intended that a properly conducted [nonjudicial] foreclosure sale should constitute a final adjudication of *the rights of the borrower and the lender*." (*Alliance Mortgage Co. v. Rothwell, supra*, at p. 1238, italics added.) This language indicates that the bar of the full credit bid rule does not apply in actions that are not on the note, for damages not caused by breach of the loan agreement, from persons who are not borrowers or otherwise party to that agreement or the successor in interest of such a person.

*Cornelison v. Kornbluth, supra*, 15 Cal.3d 590, in which our Supreme Court first articulated the full credit bid rule, confirms this view. *Cornelison*, which is cited with approval and discussed in *Alliance*, was an action for damages by the lender against a successor in interest of the borrower alleging breach of covenants in the trust deed and waste caused by the defendant's alleged failure to properly care for the property securing the deed. The plaintiff lender regained possession of the property by purchasing it by a full credit bid at a nonjudicial foreclosure sale. The Supreme Court affirmed the grant of summary judgment for the defendant. ██ In material part, the court held that an action for waste following a foreclosure sale under a purchase money trust deed is barred by Code of Civil Procedure section 580b,[5] prohibiting deficiency judgments, if the acts of the defaulting borrower that give rise to the claim of waste were in fact caused by a downturn in land values. If, however, the waste was caused by "bad faith," an action for waste will lie. The court additionally held that section 580d, which prohibits a deficiency judgment after foreclosure by private sale, also bars recovery for waste against the borrower if the waste results from depressed real estate values but not if the waste is caused by "bad faith" acts. The court rejected the plaintiff's contention that such rules were inapplicable to a successor in interest of the borrower.

The full credit bid rule is discussed in *Cornelison* solely in connection with the claim of waste, which is among a relatively small species of actions

---

do not establish as a matter of law that it sustained no actual damages." (*Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th at p. 1250.)

[5] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

the damages for which are limited to those for impairment of security.[6] By statute, the tort of waste can only be committed by a "person whose interest is subject to the lien of a mortgage." (Civ. Code, § 2929.) Thus, insofar as it involves protection for the security interest of mortgagees, the cause of action for waste "is limited to protection against harm committed by persons in possession of the property subject to the lien." (*Cornelison v. Kornbluth, supra,* 15 Cal.3d at p. 598, fn. 3.) Moreover, "[t]he measure of damages is limited to the amount of injury to the value of the mortgage security, not to the injury to the property itself." (Sheneman et al., Cal. Foreclosure Law and Practice (1994) § 6.16, p. 6-71.) The cases suggest that a lender cannot sue a borrower for damages for waste prior to foreclosure without first commencing an action to compel a judicial foreclosure sale under section 726. (Sheneman, *supra,* § 6.16, at p. 6-71, citing *American Sav. & Loan Assn v. Leeds* (1968) 68 Cal.2d 611 [68 Cal.Rptr. 453, 440 P.2d 933] and *Krone v. Goff* (1975) 53 Cal.App.3d 191 [127 Cal.Rptr. 390].)

*Cornelison* is important for present purposes because it establishes that the remedies available to a lender claiming waste against the borrower are constrained by the debtor protection policies of the antideficiency laws. As applied to waste, the full credit bid rule provides debtors protection against the same evil sought to be prevented by the antideficiency statutes. "Damages for waste would burden the defaulting purchaser with both loss of land and personal liability and the acts giving rise to that liability would have been caused in many cases by the economic downturn itself. For example, a purchaser caught in such circumstances may be compelled in the normal course of events to forego the general maintenance and repair of the property in order to keep up his payments on the mortgage debt." (*Cornelison v. Kornbluth, supra,* 15 Cal.3d at p. 603.)

The *Cornelison* court was aware of an important difference between waste and other actions that may be brought to protect a lender's security interest, and the difference between lender claims against borrowers and those against third parties. After noting that waste is limited to protection against harm committed by persons in possession of the property and subject to the lien, the court observed that "it is equally clear that a mortgagee's security interest can be impaired by harm to the property committed by third persons not in possession and that a mortgagee can recover damages in tort for such impairment of his security interest. [Citations.] This recovery

---

[6]The right of a lienholder to share in so-called severance damages awarded as a result of condemnation of a portion of property constituting security for a debt is also limited to the extent the security has been impaired. (§ 1265.225; *Brown v. Critchfield* (1980) 100 Cal.App.3d 858 [161 Cal.Rptr. 342], 864-865; *People ex rel. Dept. of Transportation v. Redwood Baseline, Ltd.* (1978) 84 Cal.App.3d 662, 670-672 [149 Cal.Rptr. 11].)

against third parties involves different considerations and rules because the person sued is not the debtor-mortgagor, who is afforded a variety of legislative and judicial protections. [Citations.]" (*Cornelison v. Kornbluth, supra*, 15 Cal.3d at pp. 598-599, fn. 3.) Among the authorities cited in *Cornelison* for this proposition was *U.S. Financial v. Sullivan* (1974) 37 Cal.App.3d 5 [112 Cal.Rptr. 18], where the court found "nothing in principle or public policy" which militates against the imposition of liability for negligent acts "to a mortgagee or beneficiary of a deed of trust when negligent conduct has resulted in the impairment of the mortgagee's or beneficiary's security interest." (*Id.* at p. 13.) As noted in *U.S. Financial*, cases support "the general proposition that a [lender] may maintain an action against *a third party tortfeasor* for conduct which *has* impaired his security."[7] (*Id.* at p. 15, italics added.)

*Cornelison* therefore provides no reason to think a full credit bid establishes the value of the property for any purpose other than a determination whether the borrower subject to the lien has satisfied the secured obligation. To say, as the *Cornelison* court did, that a lender's full credit bid extinguishes the lien and therefore bars a claim against the borrower for waste is completely different from saying that such a bid also deprives a lender of claims against others who were never subject to the lien nor protected by the antideficiency statutes. As stated in *Cale v. Transamerica Title Insurance* (1990) 225 Cal.App.3d 422 [275 Cal.Rptr. 107], *Cornelison* holds only that "a nonjudicial foreclosure sale under the statute is determinative of the value of the property *as between the lender and borrower under a deed of trust.* [Citation.]" (*Id.* at p. 428, fn. 1, italics added.)

The explanation in *Cornelison* of the relationship between the full credit bid rule and the antideficiency statutes was not disturbed by the opinion in *Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th 1226, which, we agree, "left *Cornelison* intact." (*Pacific Inland Bank v. Ainsworth* (1995) 41 Cal.App.4th 277, 283 [48 Cal.Rptr.2d 489].) Moreover, the *Alliance* court relied on other cases which, like *Cornelison*, also employ the relationship between the full credit bid rule and the antideficiency statutes as the reason not to extend the bar of the full credit bid rule to nondebtors. The *Alliance* court referred, for example, to our opinion in *Brown v. Critchfield, supra*, 100 Cal.App.3d 858. *Critchfield* was an action by a property owner alleging negligence and fraud by an attorney and real estate broker hired by the

---

[7]The language in *Cornelison* and *U.S. Financial* indicating the full credit bid rule does not bar a lender's action against a third party tortfeasor for conduct that has impaired his security is seemingly inconsistent with the emphasis the *Alliance* court placed on the fact that the plaintiff in that case was not seeking damages for the impairment of his security. (*Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th at p. 1249; see also discussion, *ante*, at p. 365.)

plaintiff to negotiate a sale of his property and to represent his interests until the sale was complete. The trial court granted the defendants' motion for summary judgment on the ground the plaintiff had alleged no cognizable damages and had therefore failed to state a cause of action. As in the present case, the court reasoned that the suit sought damages for impairment of security but there were no such damages because the plaintiff's full credit bid extinguished the lien and the security interest. The trial court in effect accepted the defendants' contention that the claims constituted an attempt to obtain a deficiency judgment under the guise of an action for negligence or fraud and, as such, runs contrary to the antideficiency statutes. We rejected that analysis and reversed the judgment, concluding that neither the antideficiency statutes nor the policies motivating their enactment "indicate that they should bar recovery of damages caused by a fiduciary's wrongdoing merely because the transaction concerned real property." (*Id.* at p. 870.) We emphasized that the plaintiff in *Critchfield*, like the plaintiff in the case now before us, "is not seeking to recover on a debt, nor is this a situation where there are conflicting claims by a mortgagor and mortgagee to the same funds. If plaintiff is allowed to prosecute his claim, and be compensated for his damages, a downward spiral of land values will not be encouraged; mortgagors will not be liable for double recovery, and overvaluation of security will not prevail. The risk inherent in secured land transactions will remain on the mortgagee, but that risk should not be expanded to include the assumption of damages resulting from a fiduciary's negligence or fraud." (*Id.* at pp. 870-871.)

Because negligence or fraud claims against third parties do not compromise any of the policies reflected in the antideficiency statutes, we held in *Critchfield* that such claims were also not barred by the full credit bid rule. (*Brown v. Critchfield, supra,* 100 Cal.App.3d at p. 871.) The gravamen of *Critchfield* lies in the manner in which we distinguished between the damages the lender seeks from a defaulting borrower in a suit on the note and those the lender seeks from a third party tortfeasor. In response to the defendants' contention that the plaintiff's full credit bid in effect gave him the benefit of his bargain, we pointed out that the plaintiff had entered into two bargains and the defendants were looking at the wrong one. "It is true that, under the bargain with the [borrowers], plaintiff received all that was contracted for. Under the bargain with his fiduciaries, however, he did not receive the full benefit, namely, fulfillment of the duty of highest good faith and of full disclosure. [Citation.]" (*Ibid.*)

For the proposition that *Alliance* applies only to fraud claims, and that absent such a claim a full credit bid estops a plaintiff from establishing damages, even against a nondebtor, respondent relies only upon *Pacific*

*Inland Bank v. Ainsworth, supra,* 41 Cal.App.4th 277.[8] We agree *Pacific Inland Bank* supports respondent's argument, but believe that case was wrongly decided and decline to follow it.

In our view, *Pacific Inland Bank* cannot be reconciled with *Cornelison,* *Alliance,* and other pertinent cases. Refusing to differentiate the relationship between the lender and the borrower from that between the lender and a third party tortfeasor, and ignoring the fact that the measure of damages on a tort claim relating to the inducement of a loan is not the impairment of security, the court divorced the full credit bid rule from public policy concerns relating to the debtor-creditor relationship. Under *Pacific Inland Bank,* the bar of the full credit bid rule operates ineluctably, for no discernible purpose and without regard to the injustice that may result. According to the court, the rule it so slavishly applies is simply "a legal conclusion unmotivated by public policy." (*Pacific Inland Bank v. Ainsworth, supra,* 41 Cal.App.4th at p. 283.) We disagree. The full credit bid rule first announced in *Cornelison* cannot be thought to have been devised by our Supreme Court mindlessly and for no purpose. As we have said, its purpose, which is to ensure the integrity of foreclosure sales in situations covered by the antideficiency statutes, relates only to the debtor-creditor relationship. The bar of the rule was not designed to relieve third parties of the consequences of tortious conduct—which is the policy the *Pacific Inland Bank* court, perhaps unconsciously, erroneously imputes to it. Use of the full credit bid rule to conclusively establish that the debt has been fully satisfied makes sense only when applied for the benefit of the borrower in connection with obligations arising under the note. Application of the rule to bar claims against tortfeasors not party to the note goes far beyond the purpose of the rule and is simply irrational.[9] *Pacific Inland Bank* has not been followed by any other court, has been rejected by the only other court we know of that has analyzed

[8]*Michelson v. Camp* (1999) 72 Cal.App.4th 955 [85 Cal.Rptr.2d 539] held that the full credit bid rule barred causes of action for, among other things, negligence and negligent representation, but the court did so because the plaintiffs did not rely on the defendant's allegedly false representation at the time they made their full credit bid (an issue we discuss in the next section of this opinion), not because *Alliance* applied only to fraud causes of action. (*Id.* at pp. 969-970.)

[9]It is hard to explain such unjustified judicial expansion of the rule as in *Pacific Inland Bank* and the cases disapproved by the Supreme Court in *Alliance Mortgage* (*i.e., Western Fed. Savings & Loan Assn. v. Sawyer, supra,* 10 Cal.App.4th 1615 and *GN Mortgage Corp. v. Fidelity Nat. Title Ins. Co., supra,* 21 Cal.App.4th 1802). Perhaps, as Professor Hetland suggests, it has to do with "[t]he unsavory visage of the mustachioed mortgagee in a top hat, ready to foreclose the family homestead," which he believes "has brooded over the development of the real property law, resulting in a system that is generously hedged about with debtor protections and potential pitfalls for the unwary secured creditor." (Hetland & Hansen, *The "Mixed Collateral" Amendments to California's Commercial Code—Covert Repeal of California's Real Property Foreclosure and Antideficiency Provisions or Exercise in Futility?* (1987) 75 Cal.L.Rev. 185, 188-189, fn. omitted.)

the opinion (*In re King Street Investments, Inc.* (Bankr. 9th Cir. 1998) 219 B.R. 848),[10] and knowledgeable commentators appear to agree it should not be followed. (See, e.g., 4 Miller & Starr, Cal. Real Estate, *supra*, § 10:218 at p. 699.)

The only justification the *Pacific Inland Bank* court offers for the bar it imposes is that the lender in that case "could have taken appropriate steps to ascertain the actual value of the properties before the trustees' sale." (*Pacific Inland Bank v. Ainsworth, supra,* 41 Cal.App.4th at pp. 283-284.) But this presents a factual, not a legal question. It is true, as pointed out in *Pacific Inland Bank,* that the Supreme Court observed in *Alliance* that "[t]he lender, perhaps more than a third party purchaser with fewer resources with which to gain insight into the property's value, generally bears the burden and risk of making an informed bid." (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1246.) This observation did not, however, deter the Supreme Court from ruling for the lender. As the court explained in the next sentence (not quoted in *Pacific Inland Bank*): "It does not follow, however, that being intentionally and materially misled by its own fiduciaries or agents as to the value of the property prior to even making the loan *is within the realm of that risk.*" (*Ibid.,* fn. omitted, italics added.)

Nor does it follow, in our view, that the lender should necessarily bear the risk of being materially misled as to the value of the property by the negligent misrepresentation of a third party. As we have explained, *Alliance* rests not so much on the egregiousness of the defendants' conduct as the fact that nonborrowers are outside the ambit of the debtor protection policies that justify application of the full credit bid rule to the acquisition of security property. Moreover, the assumption, which was adopted in *Pacific Inland Bank,* that the "exception" carved out in *Alliance* was based on the extreme nature of the tortious conduct involved in that case, fraud, is problematical even apart from the court's misunderstanding of the full credit bid rule, because the term "fraud" may be used to describe not just an intentional misrepresentation but as well certain misrepresentations that are merely

[10]In *In re King Street Investments, Inc.,* the United States Bankruptcy Appellate Panel stated its belief that the *Pacific Inland Bank* court "incorrectly applied *Alliance* in holding that the exception to the full credit bid rule is limited to fraud actions. [Citation.] [¶] We do not read the exception to the full credit bid rule as narrowly as the *Pacific* court did. Although *Alliance* addressed the exception to the full credit bid rule as it related to fraudulent misrepresentations, the California Supreme Court did not expressly limit this exception to actual fraud. The court noted that the plaintiff's fraud claims included allegations of negligent misrepresentation and breach of fiduciary duty and acknowledged that '[w]hile we focus on Alliance's intentional misrepresentation claim, justifiable reliance and actual damages are also essential elements of negligent misrepresentation and constructive fraud.' [Citation.] This reference suggests that the Court did not limit its ruling to just actual fraud." (*In re King Street Investments, Inc., supra,* 219 B.R. at p. 855.)

negligent, as the separate and distinct tort of negligent misrepresentation is "a species of the tort of deceit." (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407 [11 Cal.Rptr.2d 51, 834 P.2d 745, 48 A.L.R.5th 835]; see also *Soderberg v. McKinney* (1996) 44 Cal.App.4th 1760 [52 Cal.Rptr.2d 635].) While this point is irrelevant to our analysis—which considers the full credit bid rule inapplicable to *all* tort claims against third parties, even those for simple negligence—it is appropriate to point out that the type of negligent misrepresentation pled in this case *is* a "fraud claim" within the meaning of *Alliance Mortgage*.[11] We would therefore disagree with the judgment below on this point even if, as is not the case, we believed the Supreme Court's analysis in *Alliance* exempts only fraud claims from the bar of the rule, as held in *Pacific Inland Bank*.

The Supreme Court noted in *Alliance* that the fraud claims in that case "include allegations of intentional misrepresentation, negligent misrepresentation, and breach of fiduciary duty." (*Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th at p. 1239, fn. 4.) While it was unnecessary for the court to discuss the negligent misrepresentation allegations, it did make the following observation: "While we focus on Alliance's intentional misrepresentation claim, justifiable reliance and actual damages are also essential elements of negligent misrepresentation and constructive fraud. [Citations.]" (*Ibid.*) This statement, which calls attention to similarities between intentional and negligent misrepresentations, indicates that, as the Supreme Court recognized in *Bily v. Arthur Young & Co.*, the latter is a species of fraud, and as such analogous if not identical to the claims at issue in *Alliance Mortgage*.

For the foregoing reasons, we conclude that appellant's causes of action for negligence and negligent misrepresentation are not as a matter of law barred by the full credit bid rule.

### IV.

*The Evidence Does Not Satisfactorily Establish Appellant's
Reliance on Respondent's Appraisal at the Foreclosure Sale
Was Manifestly Unreasonable.*

The holding in *Alliance* that the lender could maintain its fraud claim against the defendant appraiser included the caveat that the lender must demonstrate that not only its loans but also *its full credit bids* were

---

[11]*Pacific Inland Bank* glosses over this issue. The lender in that case claimed its loan was undersecured as a result of the defendant's "breach of contract and its negligence in preparing the appraisals." (*Pacific Inland Bank v. Ainsworth, supra*, 41 Cal.App.4th at p. 280.) Negligent misrepresentation was apparently not specifically pled, though it seemingly could have been.

proximately caused by the defendants' fraud, "and that in the absence of such fraud it would not, in all reasonable probability, have made the bids." (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at pp. 1246-1247.) This curious requirement—which was the subject of disagreement on the Supreme Court and has sparked controversy[12]—was an alternative basis for the ruling in this case. In its order granting summary judgment, the court found that "[d]efendant Boyd has shown that the plaintiff's alleged reliance on the 1992 appraisal was unreasonable in light of the subsequent appraisal, thus barring the action."

*Alliance* states that the question of whether continued reliance was justifiable is "a generally fact-based inquiry" and that the plaintiff is *not* held " 'to the standard of precaution or of minimum knowledge of a hypothetical, reasonable man.' [Citation.] 'If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, however, he will be denied a recovery.' [Citations.]" (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1247.) The issue " 'is whether the person who claims reliance was justified in believing the representation in the light of his own knowledge and experience.' " (*Ibid.,* quoting *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 503 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763].) The requisite factual inquiry was not made in this case.

---

[12]In her concurring opinion in *Alliance,* Justice Werdegar, joined by Chief Justice Lucas, pointed out that the loss arose from the making of *the loan,* not the bid, and requiring the lender to show that he also relied on the defendant's misrepresentation when he made the bid would often operate " 'to immunize wrongdoers from the consequences of their fraudulent acts,' " which was inconsistent with the purpose of the full credit bid rule and the thrust of the majority opinion. (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1254 (conc. opn. of Werdegar, J.).)

Others have also pointed out that, because bids at foreclosure sales often bear little relationship to the fair market value of security property (*BFP v. Resolution Trust Corp., supra,* 511 U.S. 531, 539 [114 S.Ct. 1757, 1762]), employment of the fiction that a full credit bid admits genuine value is likely to create injustice if applied to relationships other than that between lender and borrower: "The 'admission of value' idea in the majority opinion [in *Alliance*] seems to be based on [Civil Code] § 2924h(a), which states that, in a trustee's sale under a deed of trust with power of sale, any bid constitutes an irrevocable offer to purchase the property for the amount of the bid. That statute is intended to state a rule of bidding so that trustee's sales will be orderly and reach finality in concluding the contractual debt relationship between lender and borrower. For that purpose it is an eminently sensible rule. However, there is no basis in logic or policy for translating that procedural rule for nonjudicial foreclosure sales into an 'admission' binding against a victim of fraud in his or her suit against third party tortfeasors. [¶] The concept that a trustee's sale bid could constitute an 'admission of value' also suggests some underlying idea of estoppel, but because estoppel is a wholly equitable doctrine, why should it arise in any respect to protect the perpetrator of fraud against the claims of the defrauded?" (Harris & Levin, *Alliance Mortgage and the Full Credit Bid Rule: Clarity or More Confusion?* (Cont.Ed.Bar 1995) 18 Real Prop. L.Rptr. 319, 322-323.)

The only portion of the record bearing upon appellant's belief and knowledge of the value of the security properties at the time of the foreclosure sale is his deposition testimony. Appellant acknowledged appraisals become less reliable as time passes but justified his belief that respondent's appraisal was more reliable than the reappraisal based on the basis of his experience as a real estate investor and on information he had received that property values in the area "were going up, not down" since the original appraisal. Respondent's counsel did not press appellant to disclose the nature and extent of his experience, the source of the independent information he considered, or when he obtained this new information. Respondent argues, in effect, that appellant's experience and knowledge is irrelevant, as no reasonable person in appellant's shoes would under any circumstances rely on an old appraisal if he had a more recent appraisal of the same property. He rests this argument on *Michelson v. Camp, supra*, 72 Cal.App.4th 955, the only extant opinion that has applied *Alliance*'s new reliance requirement.

*Michelson* was also an action by lenders against an appraiser for, among other things, negligent misrepresentation. In 1991, the defendant-respondent appraised a building at $900,000. In 1992, the plaintiffs-appellants lent the owner $475,000 secured by a first deed of trust on the building and a neighboring vacant lot which had been appraised at approximately $100,000. Shortly after accepting the loan, the borrower defaulted and filed for bankruptcy protection. In 1993 the appellants sought and obtained from the bankruptcy court relief from the stay to allow them to foreclose on the property, relying on a provision of federal law (11 U.S.C. § 362(d)) authorizing relief from a bankruptcy stay where the debtor's interest in the property is inadequate to protect the creditor. (*Michelson v. Camp, supra*, 72 Cal.App.4th at p. 959.) Counsel for the appellants argued that the property was worth far less than their lien, attaching a more recent valuation by a new appraiser showing a value of $375,000 for the building and $35,000 for the adjacent lot. One of the appellants submitted a declaration in support of the motion attesting to the unkempt nature of the property and the absence of insurance, but he did not mention the newly appraised value of the property. At the trustee's sale conducted about six months later, appellants purchased the security property by submitting a bid of $675,029. They later sold the property for $400,000. (*Id.* at p. 960.) The Court of Appeal held that the appellants' action against the appraiser was barred by the full credit bid rule because they did not reasonably rely on his appraisal when they entered their full credit bid. In so holding, the court rejected the appellants' claim that they were unaware of the new appraisal obtained by their counsel in the bankruptcy proceeding and that his knowledge could not be imputed to them: "The appraisal report was submitted on appellants' behalf to convince the bankruptcy court that there was no equity to protect on behalf of the

debtor's estate and to gain advantage for them in a court of law. We thus consider not merely imputed knowledge but also whether appellants should be estopped to deny knowledge of the report. The doctrine of judicial estoppel ' "precludes a party from asserting a position in a judicial proceeding which is inconsistent with a position previously successfully asserted by it in a prior proceeding," ' and ' "prevent[s] the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." [Citation.]' " (*Id.* at p. 970.) *Michelson* is different from the present case in important respects.

First, the only relevant information the appellants in *Michelson* possessed as to the value of the property was the appraisal and reappraisal; the chief issue was whether knowledge of the reappraisal could be imputed to them. Unlike appellant here, the appellants in *Michelson* did not claim any personal expertise or independent information as to the value of the property. While it may be that, *absent other information as to the value of subject property*, reliance on the older of two appraisals of the same property is, as a matter of law, unreasonable, which is what *Michelson* implies, that is not the situation this case presents. Clearly, the subsequent appraisal should have made appellant suspicious, and created a duty to investigate further (see *Miller v. Bechtel, supra*, 33 Cal.3d 868, 875); but it may be inferred from appellant's deposition testimony that he made such a further inquiry and on that basis considered it prudent to rely on respondent's appraisal at the time he made his bid. Whether such reliance was justified is a question that, as we have said, may not be resolved by the objective standard of the hypothetical reasonable man but must be measured " 'in the light of [appellant's] own knowledge and experience.' " (*Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th at p. 1247.)

As noted at the outset of this opinion, the drastic nature of summary judgment and the importance of safeguarding the adverse party's right to a trial require the moving party to make a strong showing. (6 Witkin, Cal. Procedure (4th ed. 1997) Proceeding Without Trial, § 218, p. 630, and numerous cases there cited.) Respondent has, however, produced little evidence regarding appellant's knowledge and experience relating to property valuation. Nor does the record shed much light on the nature of the additional advice appellant said he obtained relating to the value of the security properties. Summary judgment may not be granted on the basis of inferences reasonably deduced from the evidence if contradicted by other inferences or evidence, because in considering a motion for such relief "[a] judge has no power to weigh evidence or inferences. Thus if an inference is controverted by other evidence or inferences, there is a triable issue of fact and the motion must be denied." (*Id.*, § 219, at p. 631, citing *Gigax v. Ralston Purina Co.*

(1982) 136 Cal.App.3d 591 [186 Cal.Rptr. 395].) On review of a summary judgment in favor of the defendant, the defendant must have *"conclusively* negated a necessary element of the plaintiff's case or demonstrated that *under no hypothesis* is there a material issue of fact that requires the process of trial." (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1709 [50 Cal.Rptr.2d 323], italics added.) Respondent has not conclusively negated the possibility appellant will be able to establish the reasonableness of his continued reliance on respondent's appraisal. There is a triable issue as to this matter.

The trial court did not address the question whether appellant's reliance claim should be judicially estopped, and the parties have not briefed that issue in this court. We are unwilling to invoke the doctrine sua sponte on this record. Putting aside the incongruity of using an equitable doctrine to protect a tortfeasor and even a perpetrator of fraud against the claims of his victim, as *Alliance* may sometimes require (see discussion, *ante*, at p. 373, fn. 12), judicial estoppel is warranted only upon a clear showing that inconsistency and unfairness would otherwise result. Such showings have not been made. For example, whereas in *Michelson* the evidence apparently established that the new appraisal "was submitted in appellants' behalf to convince the bankruptcy court that there was no equity to protect on behalf of the debtor's estate and to gain advantage for them in a court of law" (*Michelson v. Camp, supra*, 72 Cal.App.4th at p. 970), the record in the present case reveals very little about what happened in the bankruptcy proceeding, though it may be inferred appellant obtained relief from the stay. Specifically, the record does not show that the reappraisal obtained by appellant's counsel was offered in appellant's behalf and received in evidence by the bankruptcy court, whether appellant offered any other evidence relating to the value of the security property, or whether the bankruptcy court accepted the reappraisal as true and granted relief on that basis. It therefore has not been established that appellant is now endeavoring to intentionally assert " 'an inconsistent position that perverts the judicial machinery' " (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 [70 Cal.Rptr.2d 96]), making it appropriate to preclude his claim. Furthermore, the doctrine of judicial estoppel was not employed in *Michelson* to prevent the appellants from claiming their reliance on the original appraisal was reasonable; it was used only to prevent them from denying knowledge of the reappraisal, which was the only basis upon which they claimed their reliance on the initial appraisal was reasonable. In the present case, however, appellant does not argue that his reliance on the original appraisal was reasonable because he was unaware of the reappraisal; he admits he knew of the reappraisal but claims that his knowledge and experience made it reasonable to disregard it and rely instead on respondent's earlier appraisal.

Nevertheless, if appellant introduced and relied upon the new appraisal in the bankruptcy proceeding he will find it difficult to explain and justify his alleged reliance on the original appraisal a few months later at the foreclosure sale. But neither the inconsistency nor the inequity has been so conclusively established by respondent at this pretrial stage that we may estop appellant from explaining the reasonableness of his reliance on the older of two appraisals, as ultimately he must.

### CONCLUSION

For the foregoing reasons, we conclude there are triable issues of fact as to whether appellant made a full credit bid and, if he did, whether when he entered his credit bid he reasonably relied on respondent's 1992 appraisals. We also determine that, if it is found appellant made a full credit bid, the full credit bid rule does not foreclose appellant's causes of action for negligence and negligent misrepresentation, provided it is properly determined he reasonably relied on respondent's alleged misrepresentations of the value of the properties when he entered his bid at the foreclosure sale.

Accordingly, the judgment is reversed and the matter remanded to the trial court for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

Haerle, J., and Ruvolo, J., concurred.