Filed 9/23/14  Chu v. Gong CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| TE CHUAN CHU,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>AI YING GONG et al.,<br><br>        Defendants and Appellants. | B246808<br><br>(Los Angeles County<br>Super. Ct. No. GC042879) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mary Thornton House, Judge.  Reversed.

Mohammed K. Ghods and William A. Stahr for Defendants and Appellants.

Wong & Mak and Steven W. Hashimoto for Plaintiff and Respondent.

_____

Plaintiff and respondent Te Chuan Chu, also known as Jason Chu, is a mortgage loan broker. Defendants and appellants are Jing Gong, a real estate investor who is also known as Tammy Gong (referred to herein as Tammy Gong), and her cousin, Ai Ying Gong. Over the course of five or six years, plaintiff and Tammy Gong entered into a series of financial transactions, some individually, and some through companies they owned. Ai Ying Gong was involved in some of these transactions. She and a company owned by Tammy Gong filed a cross-complaint against plaintiff, a company he owns, and his father-in-law.[1] This litigation involves a dispute over which party owes money to the other, and in what amount.

In the trial court proceedings, plaintiff's damages claims varied dramatically and without coherent explanation, from the operative pleading, to opening statement, to his trial testimony, to closing argument, to the statement of decision and the proposed forms of judgment he submitted to the court. After the court entered an initially proposed judgment, plaintiff acknowledged the damages figures were incorrect. After further proceedings, the trial court entered an amended judgment which also departs from the evidence of damages at trial.

Plaintiff's damages claims continued to shift on appeal. The proposed forms of judgment plaintiff submitted to the trial court bore little resemblance to the evidence of damages at trial, and his arguments on appeal in support of the amended judgment likewise rest on facts that are not found in the amended judgment. Finding no substantial evidence supports the damages awarded, we reverse and remand for further proceedings in conformance with this opinion.

## BACKGROUND

### 1. The Transactions Among the Parties

Most of the transactions involved in this case were initiated by plaintiff and Tammy Gong individually. There was considerable evidence at trial about transactions

---

[1] The cross-complaint was apparently dismissed during a January 2012 status conference, and the issues raised in the cross-complaint were deemed affirmative defenses.

that are not in dispute, and we will not recite here the facts concerning those transactions. The loan transactions that *are* in dispute were secured at various times with deeds of trust against three different parcels of real property that we refer to in this opinion as the "Walnut" property, the "Garvey" property, and the "Valley" property. Before we turn to a summary of the disputed transactions, we introduce the names of other individuals and entities that were involved in the transactions. In addition to Ai Ying Gong, L&G Garvey Investment, LLC filed a cross-complaint against Jason Chu, Jason Chu's father-in-law Ming Jer Lin, and Jason Chu's company, MFG Funding, Inc. There was considerable evidence at trial concerning "Mr. Chen," who is not a party to this litigation, who also engaged in financial transactions with plaintiff and Tammy Gong.

It is undisputed that plaintiff agreed to lend $310,000 to Tammy Gong, and he caused the funds to be transferred to her personal account. However, it is also undisputed that plaintiff and Tammy Gong agreed to secure the loan with a promissory note stating the borrower is Prelude Investment LLC, and a deed of trust against a residence at 401 Walnut Avenue in Arcadia (the Walnut property) also showing the borrower as Prelude Investment LLC. The note and deed of trust are both dated December 15, 2005.

Tammy Gong signed this note on behalf of Prelude Investment LLC, payable to plaintiff and Ming Jer Lin, who plaintiff testified is his father-in-law. Plaintiff testified Tammy Gong was the borrower and her company, Prelude Investment LLC, owned the property she used to secure the loan. The note and other documents show Prelude Investment LLC is the sole borrower. Consistent with the note, the deed of trust shows the lenders are plaintiff and Ming Jer Lin. The deed of trust shows the trustee is MFG Funding, Inc.

At the request of Tammy Gong, plaintiff cancelled the original note and reconveyed the Walnut property deed of trust. Tammy Gong told plaintiff she wanted to refinance the Walnut property. She offered to replace plaintiff's deed of trust against the Walnut property with a deed of trust against undeveloped property located at 11605 Garvey Avenue in El Monte (the Garvey property), in addition to providing additional security after she refinanced the Walnut property. Plaintiff testified there was

3

not enough equity in the Garvey property to secure the entire amount of the $310,000 loan.

A new note, for $300,000, and deed of trust dated December 11, 2007, superseded the original note and deed of trust. It is not disputed the $300,000 face value of the note was a typographical error, and the debt was actually $310,000. The new note was to be signed by Tammy Gong on behalf of another one of her companies, L&G Garvey Investment, LLC, but it was never signed. It was secured by a deed of trust against the Garvey property, showing L&G Garvey Investment, LLC as the borrower. Although the note is unsigned, Tammy Gong has never argued to the trial court or on appeal that foreclosure on the deed of trust against the Garvey property was barred because the underlying note was unsigned. Tammy Gong does not dispute the $310,000 debt on the ground it was secured by a note in the amount of $300,000 or on the ground the note was unsigned.

In addition to this $310,000 debt, plaintiff also sought to recover $50,000 from Tammy Gong. Plaintiff testified that he paid $50,000 to a third party, Mr. Hsin-Yu Chen, on behalf of, and at the request of, Tammy Gong, in partial payment of Tammy Gong's debt to Mr. Chen. Tammy Gong acknowledged an indebtedness to Mr. Chen, but disputed that plaintiff was entitled to recover from her $50,000 that he claimed to have paid Mr. Chen on her behalf. The record does not include any documents evidencing that plaintiff paid $50,000 to Mr. Chen in partial satisfaction of Tammy Gong's indebtedness to him. As described below, plaintiff testified Tammy Gong's indebtedness to him of $50,000 was included in the much greater face value of notes and deeds of trust subsequently issued by Tammy Gong's cousin, Ai Ying Gong, and also by L&G East Valley, LLC.

On January 18, 2008, defendant Ai Ying Gong gave plaintiff a note for $190,000 and a deed of trust to be recorded as a second trust deed against the Walnut property. It was undisputed that plaintiff did not lend $190,000 to Ai Ying Gong.[2] Plaintiff testified

---

[2] The cross-complaint alleged that "Chu paid no monetary or other consideration to Ai Ying Gong for the $190,000.00 promissory note. . . ."

4

that money did not "change[] hands" between plaintiff and Ai Ying Gong. Plaintiff testified the $190,000 secured loan was intended to provide additional security for repayment of Tammy Gong's debts, since the equity in the Garvey property was not sufficient to secure the $310,000 debt. Plaintiff testified the $190,000 face value of Ai Ying Gong's note included the $50,000 he had paid to Mr. Chen on behalf of Tammy Gong and the $140,000 shortfall in equity in the Garvey property.

Plaintiff did not record this deed of trust against the Walnut property until February 10, 2009, at which time he discovered there were two senior liens recorded against the Walnut property, despite Ai Ying Gong's agreement and Tammy Gong's assurance that his deed of trust would be recorded in second position. On May 25, 2011, the second lienholder, Gui Yun Sun, who is the stepmother of Ai Ying Gong, foreclosed on the Walnut property. Plaintiff thus became a sold-out junior lienholder whose security interest in the Walnut property was extinguished by Gui Yun Sun's foreclosure of her senior lien.

On June 13, 2008, the parties again rearranged the security for the $310,000 loan as well as the unpaid balance due on a $450,000 loan that Mr. Chen had made to L&G Garvey Investment, LLC. On behalf of L&G East Valley, LLC, Tammy Gong signed an interest-only addendum to fixed rate note, payable to plaintiff in the amount of $675,583. The actual note (as opposed to the interest-only addendum) is not in the record, but the parties do not dispute the addendum is evidence of the note securing the deed of trust. L&G East Valley, LLC secured this note by a deed of trust against property located in Rosemead (the Valley property).

The parties agree that neither Tammy Gong nor L&G East Valley, LLC owed the entire amount of the $675,583 note to plaintiff. Plaintiff testified the $675,583 amount included the principal amount of the $310,000 loan he made to Tammy Gong, the $50,000 plaintiff paid to Mr. Chen on behalf of Tammy Gong, plus the unpaid principal balance of $280,000 that was owed to Mr. Chen. (The original $450,000 debt to Mr. Chen had been reduced to $280,000.)

5

Plaintiff never alleged Mr. Chen assigned Tammy Gong's indebtedness to plaintiff, and plaintiff testified at trial there was no assignment. The parties contemplated that, in exchange for the L&G East Valley, LLC note for $675,583 and the deed of trust against the Valley property, plaintiff would cancel the unsigned note from L&G Garvey Investment, LLC, and he and Mr. Chen would reconvey their deeds of trust against the Garvey property, but that never happened.

Instead, on February 5, 2010, plaintiff foreclosed on the Garvey property by way of a trustee's sale (nonjudicial foreclosure). He made a full credit bid of $431,933. Plaintiff's lien was behind a first lien from a bank, a second lien from Mr. Chen, and a tax lien. Plaintiff took title with his father-in-law, Ming Jer Lin.

At some point before trial, the parties made an agreement to permit the sale of the Valley property. Plaintiff reconveyed the L&G East Valley, LLC deed of trust, and the property was sold. In response to our Government Code letter,[3] the parties agree the record does not reflect whether plaintiff cancelled the L&G East Valley, LLC note, nor is there any evidence as to what happened to it. Sincere Escrow is holding $185,000 (plus an additional $45,836) in net proceeds pending the resolution of this lawsuit to determine to whom the proceeds should be paid.

In addition to these transactions, plaintiff transferred an additional $120,000 to Tammy Gong with the expectation that she would use it to acquire investment property in partnership with plaintiff. On January 4, 2007, plaintiff transferred $80,000, and on June 18, 2007, he transferred another $40,000 to Tammy Gong. The investments were not made, and Tammy Gong agreed to return the money, in an email to plaintiff dated August 13, 2009. Plaintiff testified that when Tammy Gong was unable to purchase the intended investment property, she agreed the money advanced to her would be treated as a loan. Tammy Gong testified the money was intended to be an investment and was not intended to be a loan. There are no other documents that evidence these transfers.

---

[3]     This court, by letter dated June 5, 2014, requested additional briefing from the parties on a number of issues under Government Code section 68081.

6

**2.      Plaintiff's Ever-changing Damages Theories and the Court's Judgment**

In the operative complaint, plaintiff prayed for damages of $190,000 plus interest and punitive damages against Ai Ying Gong, for a single loan to her, and $514,021 plus interest against Tammy Gong, for a series of six oral loan agreements.

The damages claims shifted before, during, and after trial. During his opening statement, plaintiff said the dispute involved one $310,000 loan to Tammy Gong (the others had been repaid), and two later money transfers of $80,000 and $40,000, the nature of which was disputed (the transfers were either loans or an investment). In closing argument, plaintiff argued Tammy Gong owed $310,000, plus $50,000, plus $120,000 for a total of $480,000 in principal, plus interest. In his closing argument, plaintiff's counsel relied heavily on an August 13, 2009 email from Tammy Gong to plaintiff sent after she had appeared in this lawsuit, in which she acknowledged the debt to Mr. Chen of $280,000 and referred to $310,000 and $50,000 owed to plaintiff, and she said she would repay the $120,000 plaintiff had invested with her. Plaintiff's counsel asked the court to award $190,000 jointly and severally against Tammy Gong and Ai Ying Gong and to award the balance of the $480,000 ($290,000) against Tammy Gong. (Plaintiff told the court in his opening statement these were the damages he expected to prove, except that he did not mention the $50,000 in his opening statement.)

Yet in the proposed statement of decision plaintiff prepared for the court, which the court adopted, the breach of contract damages against Tammy Gong are found to be $590,000, plus interest, and $5,000 in punitive damages; an *additional* $190,000, plus interest was to be awarded as to all causes of action against Ai Ying Gong (not jointly and severally with Tammy Gong). The proposed statement of decision also found Tammy Gong owed plaintiff an *additional* $170,000.

The original judgment in favor of plaintiff awarded $765,000 in damages plus interest of $325,636.98 against Tammy Gong for a "total judgment of $1,090,636.90" against Tammy Gong. The judgment broke down the damages on the various causes of action as follows: for breach of contract, common counts, civil conspiracy and fraud, the court awarded $590,000 in damages, plus $244,884.60 in interest. The court awarded an

additional $5,000 punitive damages on the fraud cause of action. On the common counts, the court awarded an additional $170,000 in damages, plus an additional $80,752.38 in interest.

The original judgment also awarded $190,000 in damages plus interest of $83,644.35 for a total judgment of $273,644.35 against Ai Ying Gong on the causes of action for common counts, breach of contract, fraud and civil conspiracy. The court also awarded attorney fees against Ai Ying Gong only, in the amount of $24,618.

Counsel and the court recognized there were mathematical errors in the original judgment. After further proceedings, the court issued an amended judgment awarding $570,000 plus interest of $258,650.86, and $5,000 punitive damages against Tammy Gong for a total judgment of $833,650.86 against Tammy Gong. In addition, the amended judgment awarded $190,000 plus interest of $90,983.40 against Ai Ying Gong and Tammy Gong "jointly" for a total of $280,983.40. The attorney fee award remained the same, against Ai Ying Gong only.

## DISCUSSION

### 1. The Damages Awarded Are Not Supported by Substantial Evidence

The proper award of damages is an issue of fact which is reviewed under the substantial evidence test. (See, e.g., *Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1078; *Morlife, Inc. v. Perry* (1997) 56 Cal.App.4th 1514, 1528.) On a more specific front, damages on a contract claim should be measured in an amount that puts the plaintiff in the position he or she would have occupied had the defendant performed his or her end of the parties' contract. (See, e.g., *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 123; see also Civ. Code, § 3300.) For a plaintiff who prevails on a common count arising out of a contractual relationship, the measure of damages is the amount of money had and received by the defendant under the contract. (*Benson Elec. Co. v. Hale Bros. Associates, Inc.* (1966) 246 Cal.App.2d 686, 697.)

Although the operative complaint alleged various causes of action for recovery of money, breach of oral contract as to Tammy Gong, breach of written contract as to Ai

8

Ying Gong, fraud (including conspiracy to defraud) as to both defendants, and a common count for money had and received as to both defendants, each of plaintiff's causes of action did not give rise to independent liability which allowed him to recover beyond the total amount of money he was owed. (See, e.g., *Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1612 [" 'Regardless of the nature or number of legal theories advanced by the plaintiff, he is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence. [Citation.] Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited. [Citation.]' [Citation.]"].)

We find the damages awarded here were not supported by substantial evidence for the reasons explained below, and that plaintiff is not entitled to a new trial to establish his damages claims. "When the plaintiff has had full and fair opportunity to present the case, and the evidence is insufficient as a matter of law to support plaintiff's cause of action, a judgment for defendant is required and no new trial is ordinarily allowed, save for newly discovered evidence. . . . Certainly, where the plaintiff's evidence is insufficient as a matter of law to support a judgment for plaintiff, a reversal with directions to enter judgment for the defendant is proper." (*Kelly v. Haag* (2006) 145 Cal.App.4th 910, 919.) Except for the $120,000 that Tammy Gong agreed to return to plaintiff, we find judgment should be entered for defendants.

a. **The damages awarded are duplicative and unrelated to the proof at trial.**

The damages awarded include duplicative awards and inexplicably exceed the principal amounts owed that plaintiff argued he had proved at trial. For example, the damages include multiple awards of the $190,000 plaintiff sought to recover from Ai Ying Gong. Plaintiff testified Ai Ying Gong's $190,000 note provided additional security for the $50,000 he paid Mr. Chen on behalf of Tammy Gong and the $140,000 shortfall in security for the $310,000 he agreed to lend Tammy Gong. However, the $50,000, as well as the entirety of the $310,000 purportedly owed by Tammy Gong, were included in the $675,583 note secured by the Valley Property, which has been sold. The

9

court awarded plaintiff recovery of this $190,000 at least twice, in the awards against Ai Ying Gong and Tammy Gong.

Plaintiff testified the $310,000 was also included in the $675,583 note secured by the Valley property, and the parties stipulated to a sale of the Valley property in about September 2010. The record does not disclose how the proceeds of that sale are to be distributed but the parties agree there is $185,000 being held in escrow to which plaintiff claims entitlement. At trial, plaintiff testified the escrow company was holding $185,000 in proceeds from the sale to be paid to plaintiff and an additional $45,836 to be paid according to the judgment in this case. The Sincere Escrow settlement statement shows that $185,000 was paid to plaintiff. However, the parties agreed in their responses to our Government Code letter that the record does not reflect whether the $185,000 has actually been paid to plaintiff, or whether the escrow company is still holding the $185,000 at this time; or what the $185,000 payment was for, or intended to be for. On this record, it is impossible for us to determine to what extent the proceeds from the sale of the Valley property will satisfy plaintiff's damages claims.

**b.      The antideficiency statutes bar recovery of any part of the $310,000.**

The damages are also excessive because plaintiff foreclosed on the Garvey property in a nonjudicial foreclosure sale, which bars a deficiency action to recover any part of that $310,000 debt from the borrower, L&G Garvey Investment, LLC.

"California has an elaborate and interrelated set of foreclosure and antideficiency statutes relating to the enforcement of obligations secured by interests in real property." (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236 (*Alliance Mortgage*).) But, as an overarching principle, the statutory scheme contemplates that "there is only 'one form of action' for the recovery of any debt or the enforcement of any right secured by a . . . deed of trust. That action is foreclosure, which may be either judicial or nonjudicial. (Code Civ. Proc., §§ 725a, 726, subd. (a).) . . . ." (*Ibid.*)

At a nonjudicial foreclosure sale, the trustee invites bids, in an ostensible competitive bidding process, to purchase the real property securing an underlying debt. At such a sale, the lender is entitled to bid to purchase the real property. When a lender

10

chooses to bid, the lender "does so in the capacity of a purchaser. [Citation.]" (*Alliance Mortgage*, *supra,* 10 Cal.4th at p. 1238.) The only difference between a lender and any other bidder at a nonjudicial foreclosure sale is that the lender is not required to pay cash, but is entitled to make what is known as a "credit bid." "The purpose of this entitlement is to avoid the inefficiency of requiring the lender to tender cash [to the trustee] which would only be immediately returned [by the trustee to the lender]. [Citation.]" (*Ibid*.; see also Civ. Code, § 2924h, subd. (b); *Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 607.)

When a lender makes a credit bid that is equal to the amount of the unpaid principal on a borrower's loan debt, plus unpaid interest, plus the costs, fees and other expenses of the trustee's sale, this is known as a "full credit bid." When a lender makes a full credit bid, the lender (acting in the role of a purchaser) is deemed to have "paid" the full amount of the debt, in effect by paying itself, and purchases the property; the debt is deemed satisfied and, with the debt satisfied, the security interest is extinguished. (See Civ. Code, § 2910; *Kolodge v. Boyd* (2001) 88 Cal.App.4th 349, 356 (*Kolodge*).) " 'This is true as well for a foreclosing junior lienholder. That is, when the junior lienholder makes a full credit bid and acquires the property at the trustee's sale, the debt secured by the junior lien is satisfied and the lien is extinguished. [Citations.] However, the junior lienholder, like any other successful purchaser, takes the property subject to the senior lien. [Citations.]' [Citation.]" (*Kolodge*, at p. 356.)

Under the full credit bid rule, a lender who makes a full credit bid is deemed to have irrevocably warranted that the value of the real property (which provides security for an underlying loan) sold at the nonjudicial foreclosure sale was equal to the full credit bid (i.e., the outstanding indebtedness). (*Kolodge*, *supra*, 88 Cal.App.4th at p. 357.) "Because the secured obligation has been totally satisfied, there is no deficiency that can be sued upon [because there has been no loss]." (*Ibid*.) When a lender acquires property by making a full credit bid, the borrower is released from any further obligation under the defaulted note. (*Alliance Mortgage*, *supra*, 10 Cal.4th at p. 1238.) Also, under the full credit bid rule, when a lender makes such a bid, it is precluded, for purposes of any further action against its borrower at some later point in time, from claiming that the real

property was actually worth less than the amount of the full credit bid. (*Ibid*.) Accordingly, L&G Garvey Investment, LLC is not liable on the $310,000 debt.

### c. Tammy Gong is not personally liable to repay the $310,000.

Plaintiff argues the antideficiency statutes do not apply because Tammy Gong borrowed the $310,000 and not L&G Garvey Investment, LLC. Plaintiff asserts this is so while at the same time acknowledging consistently throughout this litigation that only one loan of $310,000 gave rise to his lawsuit. It is undisputed the loan was secured by an *unsigned* note showing L&G Garvey Investment, LLC as the sole borrower and a related deed of trust (that was recorded notwithstanding the absence of the borrower's signature on the note). Plaintiff offers no explanation or legal authority to support his claim that Tammy Gong remains personally liable on a loan that was secured by an unsigned promissory note and a deed of trust which both demonstrate the borrower is L&G Garvey Investment LLC.

Throughout the trial, the witnesses and lawyers referred to the $310,000 loan as having been made between plaintiff and Tammy Gong. But all the evidence described above indisputably shows the borrower was *not* Tammy Gong, but Prelude Investment LLC, then L&G Garvey Investment, LLC, and finally L&G East Valley, LLC. No witness explained why the parties structured the transactions this way. Plaintiff is a licensed mortgage broker and he or someone in his office prepared all the loan documents related to the funds that he and Ming Jer Lin advanced to Tammy Gong. He necessarily knew that the various limited liability companies were the named borrowers, not Tammy Gong, and that she did not sign any of the notes or deeds of trust in her individual capacity. Plaintiff never tried to prove the notes or deeds of trust were prepared incorrectly.

Tammy Gong initially testified with the assistance of a foreign language interpreter. Her later testimony offered without the assistance of an interpreter demonstrated she is far from fluent in speaking and understanding English. The evidence supports a reasonable inference that, although plaintiff and Tammy Gong referred to the transactions as between one another, they always contemplated the actual borrower

12

would be one of the limited liability companies that held title to the properties that were offered as security. The evidence also supports a reasonable inference that plaintiff and Tammy Gong made an oral agreement that plaintiff would lend her $310,000 which they later modified by changing the indebtedness from a personal obligation of Tammy Gong to a debt, first, of Prelude Investment LLC that was exchanged for a debt of L&G Garvey Investment, LLC and a debt of L&G East Valley, LLC.

The parties confirmed in their responses to our Government Code letter that there is no evidence in the record, such as a note signed in Tammy Gong's individual capacity, or a guarantee of the note of L&G Garvey Investment, LLC, indicating that Tammy Gong assumed personal liability for the debt of L&G Garvey Investment, LLC. At trial, plaintiff called Tammy Gong under Evidence Code section 776 and never asked her if she owed the debt personally. Plaintiff never alleged or tried to prove Tammy Gong personally guaranteed the $310,000 loan. Plaintiff never alleged or tried to prove that Tammy Gong was the alter ego of any limited liability company, or that the limited liability companies were not the true record owners of the secured properties. Plaintiff never alleged or tried to prove that Tammy Gong caused the limited liability companies to take title to the property that plaintiff accepted as security for the debt in order to perpetrate a fraud. Absent any evidence that Tammy Gong is personally liable for the $310,000 debt, the award against her is unsupported, and must be reversed.

**d.    The court erred in finding plaintiff's two investments totaling $120,000 were unpaid loans.**

It is undisputed plaintiff made two transfers totaling $120,000 to Tammy Gong to be invested in real estate, and that the investments were not made. It is also undisputed that in an email dated August 13, 2009, sent by Tammy Gong to plaintiff after this lawsuit was filed, she stated she would repay the money within one year. That email is the only documentary evidence of these two transactions. The email did not include an offer to convert the funds into a loan, nor a promise to pay interest. Plaintiff testified that Tammy Gong agreed the $120,000 advanced to her should be treated as a loan, but he also acknowledged the email was the only writing memorializing the loan, and did not

13

testify when, other than the time promised in the email, the money was to be returned. Tammy Gong's email is sufficient to constitute a promise to return the funds to plaintiff, but even considered together with plaintiff's testimony, there is not substantial evidence the parties agreed to convert the investment to a loan, much less an interest-bearing loan. While plaintiff may be entitled to prejudgment interest, the record here does not support the award made by the trial court.[4]  (See Civ. Code, § 3287.)

e.       **The court erred in awarding punitive damages against Tammy Gong.**

Tammy Gong contends the $5,000 award of punitive damages against her must be reversed because plaintiff did not present evidence showing her net worth or financial condition.  Plaintiff does not address the issue in his respondent's brief.

"[A]n award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition." (*Adams v. Murakami* (1991) 54 Cal.3d 105, 110-112.)  This rule derives from basic, common sense, taking into account the purposes of punitive damages, namely, to punish the defendant and deter future wrongful conduct.  To achieve these purposes, punitive damages must be in an amount that will actually feel like punishment to the defendant and that will deter the defendant from future wrongful conduct.  At the same time, punitive damages should not be in an amount that exceeds the level necessary to accomplish the same.  Without evidence of a defendant's financial condition, a reviewing court can only speculate as to whether the award is appropriate or excessive. (*Ibid.*)

Here, the record does not contain any evidence of Tammy Gong's financial condition.  Absent this evidence, the punitive damages award is unsupported, and must be reversed.  "When a punitive damage award is reversed based on the insufficiency of the

---

**4**      It appears the trial court awarded prejudgment interest of 10 percent, accruing from a "breach" date of October 22, 2007.  According to plaintiff, this "breach" date is the date plaintiff made one of these "loans."  Tammy Gong could not have breached an obligation to pay back a loan on the date it was made to her.  At most, the evidence shows that Tammy Gong neglected to pay the sums owed by August 2010 (the time she promised to return the money in her email).

evidence, no retrial of the issue is required." (*Baxter v. Peterson* (2007) 150 Cal.App.4th 673, 681-682.)

  **f.**  **No substantial evidence supports the damages award against Ai Ying Gong.**

  Plaintiff explained the making of Ai Ying Gong's $190,000 note as follows. Plaintiff had cancelled the original $310,000 note from Prelude Investment LLC and reconveyed the Walnut property deed of trust at the request of Tammy Gong, who told plaintiff she wanted to refinance the Walnut property. She caused L&G Garvey Investment, LLC to issue a new note, for $300,000 (a typographical error), secured by a deed of trust against the Garvey property.

  Ai Ying Gong gave plaintiff a note for $190,000 and another deed of trust against the Walnut property because there was not enough equity in the Garvey property to secure the entire $310,000 debt. Plaintiff unequivocally testified the $190,000 was intended to provide additional security for repayment of Tammy Gong's debts. Plaintiff testified the $190,000 face value of Ai Ying Gong's note included the $50,000 he had paid to Mr. Chen on behalf of Tammy Gong and the $140,000 shortfall in equity in the Garvey property.

  It was undisputed that plaintiff did not lend $190,000 to Ai Ying Gong. In closing, plaintiff acknowledged that "no money changed hands" between plaintiff and Ai Ying Gong on any of the loans. Nonetheless, plaintiff contends he gave consideration for Ai Ying Gong's loan. Plaintiff argues the consideration given was the reconveyance of the Prelude Investment LLC note and deed of trust against the Walnut property and acceptance of the L&G Garvey Investment, LLC note and deed of trust against the Garvey property.

  "[U]nder the Civil Code (sec. 1614) a written instrument is presumptive evidence of a consideration. This, of course, is a disputable presumption but as a presumption, it is sufficient evidence of a consideration and must be accepted as such unless it is overcome by evidence to the contrary and 'the burden of showing a want of consideration sufficient

15

to support an instrument lies with the party seeking to invalidate or avoid it.' [Citation.]" (*Thom v. Stewart* (1912) 162 Cal. 413, 420.)

In this case, Ai Ying Gong did not attack the judgment on the basis of no consideration, instead focusing her attack on the absence of substantial evidence to support the excessive and duplicative damages awards, and on the "one form of action" rule which she contends required plaintiff to exhaust his security interest in the Walnut property by judicial foreclosure before suing her directly. We find Ai Ying Gong waived the affirmative defense of the "one form of action" rule because she did not raise it at trial. (*Walker v. Community Bank* (1974) 10 Cal.3d 729, 738-739.)

We would not ordinarily consider whether plaintiff gave Ai Ying Gong consideration for her note, since as a matter of law her note is presumptive evidence of consideration, and it was her burden to prove she received no consideration. But *plaintiff* raised the issue of consideration, both at trial and on appeal, in response to Ai Ying Gong's argument that no substantial evidence supports the damages award against her. Also, lack of consideration was raised as an affirmative defense at trial. In evaluating the substantial evidence challenge, we necessarily reviewed all the parties' record citations. On this record, we find *plaintiff's own testimony* dispelled the presumption that Ai Ying Gong received consideration for her note. (*Steward v. Paige* (1949) 90 Cal.App.2d 820, 825 [where evidence is wholly irreconcilable with a statutory presumption of fact, the presumption is dispelled and disappears from the case].)

Plaintiff argues the consideration given was the *benefit to Tammy Gong* of exchanging the Walnut property as security for the Garvey property, which enabled Tammy Gong to refinance the Walnut property. Plaintiff relies entirely on a citation to *Cechettini v. Consumer Associates, Ltd.* (1968) 260 Cal.App.2d 295 (*Cechettini*) for the proposition there is consideration if a benefit is bestowed on a third person.

*Cechettini* is of no assistance to plaintiff. In that case, a corporate lessee and its sole shareholder cosigned promissory notes given to each of eight former stockholders as part of the transaction by which the sole shareholder acquired all the outstanding stock of the corporate lessee. (*Cechettini*, *supra*, 260 Cal.App.2d at pp. 296-297.) The notes

16

secured the former shareholders' agreement to remain co-obligors on the corporation's lease for two years. Within less than two years, the corporate lessee defaulted on the lease, and the sole shareholder defaulted on the notes. When the former shareholders sued, the sole shareholder and corporation claimed they received no consideration for the notes. (*Id.* at p. 297.) The court found both the sole shareholder and the corporation received consideration for the notes because they were an integral part of the stock sale.

Plaintiff does not explain how *Cechettini* applies to the totally disparate facts in this case. Apart from their familial relationship as cousins, there is no evidence in the record indicating any relationship between Tammy Gong and Ai Ying Gong to support an inference that consideration given to Tammy Gong benefited Ai Ying Gong. Absent this evidence, the award against Ai Ying Gong is unsupported, and must be reversed.

**2.      Defendants Waived Their Remaining Claims of Error**

Defendants argue the trial court erred in declaring that plaintiff's fiduciary duties to defendants were void. They also argue the court abused its discretion in declaring null and void the deed of trust by which Ai Ying Gong's stepmother, Gui Yun Sun, obtained title to the Walnut property. Defendants have not developed these arguments sufficiently to establish prejudicial error. (See, e.g., *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99; Cal. Rules of Court, rule 8.204(a)(1)(B).)

**DISPOSITION**

The judgment is reversed, including the award of attorney fees. Plaintiff shall recover nothing from Ai Ying Gong. Plaintiff shall recover $120,000 from Tammy Gong, the money he intended to invest with her that she agreed to repay since no investment was made. On remand, the trial court may decide whether any interest is due to plaintiff and, if so, in what amount. The parties are to bear their own costs on appeal.


                                                  GRIMES, J.

We concur:

              RUBIN, Acting P. J.


              FLIER, J.

17