Filed 9/8/23  Yoder v. Okhovat CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JANINE M. YODER,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br><br>MAHYAR OKHOVAT et al.<br><br>　　Defendants and Respondents, | B320945<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV00442)<br><br><br>ORDER MODIFYING<br>OPINION (NO CHANGE<br>IN JUDGMENT) AND<br>ORDER DENYING PETITION<br>FOR REHEARING |

THE COURT:

　　The opinion in the above-entitled matter filed on August 24, 2023 is modified as follows:

　　On page 2, the first sentence of the third paragraph beginning with "According to plaintiff," is deleted and replaced with the following sentence:

　　According to plaintiff, Dr. Okhovat forced her left foot and ankle with both hands inwardly while performing the EMG of her left leg, at which point she heard a pop and felt excruciating pain in her left foot and ankle.

This modification does not constitute a change in the judgment.

The petition for rehearing filed on September 5, 2023 is denied.

_____

ROTHSCHILD, P. J.          CHANEY, J.          BENDIX, J.

Filed 8/24/23  Yoder v. Okhovat CA2/1 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| JANINE M. YODER, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> MAHYAR OKHOVAT et al. <br><br> Defendants and Respondents, | B320945 <br><br> (Los Angeles County Super. Ct. No. 20STCV00442) |

APPEALS from the judgment of the Superior Court of Los Angeles County, Bernie C. LaForteza, Judge.  Affirmed.

Janine M. Yoder, in pro. per., for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza, Nicole F. DeVanon; Schaeffer Cota Rosen, James C. Schaeffer and Dana A. Garber for Defendants and Respondents.

————————————————

Plaintiff Janine M. Yoder sued defendants Mahyar Okhovat, M.D., and Dr. Mahyar Okhovat, M.D., Inc. (collectively, defendants) for medical malpractice. The defendants successfully moved for summary judgment, and the court thereafter entered judgment in their favor. Plaintiff appealed. We affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

On January 7, 2020, plaintiff, acting in propria persona, filed a complaint in the superior court against defendants alleging a cause of action for negligence and medical malpractice. She alleged that on January 8, 2019, Dr. Okhovat "negligently, carelessly, [and] recklessly" conducted an electromyography test (EMG) on plaintiff that "damag[ed] her left ankle and foot."

According to plaintiff, Dr. Okhovat forcefully twisted her left foot and ankle with both hands inwardly while performing the EMG of her left leg, at which point she heard a pop and felt excruciating pain in her left foot and ankle. She asserts that, as a result of the incident, she continues to experience severe pain in her left foot and ankle and has developed acute tendinitis and complex regional pain syndrome (CRPS).

### A. *Defendants' Motion for Summary Judgment*

On February 22, 2021, defendants filed a motion for summary judgment. The motion was based on the alternative grounds that there is no triable issue of material facts as to whether (1) Dr. Okhovat breached the applicable standard of care and (2) if Dr. Okhovat breached a duty of care, his conduct did not cause plaintiff's injuries, and that defendants are entitled to judgment as a matter of law.

2

Defendants supported the motion with the declaration of Peter-Brian Andersson, M.D., a neurologist with experience in performing EMGs and diagnosing and treating patients with CRPS. Dr. Andersson reviewed plaintiff's deposition testimony and medical records.

Dr. Andersson opined "to a reasonable degree of medical probability, that no conduct on the part of Dr. Okhovat caused or contributed to any injury to [plaintiff] or aggravated any pre-existing problem or injury." Dr. Andersson further opined that, if Dr. Okhovat did "manipulate [plaintiff's] left ankle and foot during the EMG study, this would not have caused or contributed to the plaintiff's claimed injuries, including her allegation that she has developed CRPS involving her left leg, ankle and foot."

Dr. Andersson explained that an EMG study measures muscle response or electrical activity in response to nerve stimulation of the muscle. The study is conducted with needle electrodes, which are inserted through the skin into the patient's muscles. An EMG measures muscle activity while at rest and while contracting by measuring the electrical activity picked up by the electrodes on an oscilloscope. According to Dr. Andersson, the data from Dr. Okhovat's EMG of plaintiff showed "normal test results," which "rule out that [plaintiff] suffered any type of acute injury to her left leg, including her foot and ankle, immediately before and at the time that this EMG was performed." Dr. Andersson further stated that "if Dr. Okhovat had caused trauma to [plaintiff's] left foot, ankle or leg at the time of her EMG, this study could not have been completed. Trauma would have caused injury to the muscles which would have prevented their contraction. This would have prevented

3

the completion of this EMG [and] . . . precluded normal test findings on the EMG."

Dr. Andersson also relied on records concerning plaintiff's visit to the emergency room at West Hills Medical Center immediately after the EMG. According to these records, plaintiff complained of a possible deep vein thrombosis or blood clot, which she believed may have developed as a result of an airplane flight she took two days prior, and of pain as a result of "a nerve test performed" earlier that day. She complained of pain and swelling in both lower extremities. A physician noted "[m]ild swelling to [plaintiff's] right lower extremity" and "[t]enderness to palpation to the left region of the hamstring." The hospital's records, however, do not indicate any problem with her left ankle or foot. An X-ray of her left ankle was "normal," and the physician's impression of radiological lab results concerning plaintiff's left ankle state only: "Negative examination." According to Dr. Andersson, these records do not indicate "that she sustained any injury to her left ankle or foot[,] such as swelling, redness, bruising or warmth."

The day after the incident with Dr. Okhovat, plaintiff was examined at Mission City Community Network medical clinic. According to the records of that visit, plaintiff was seen "for [v]ertigo-like symptomatology." The records of that visit include no reference to any problem with her left leg, foot, or ankle. According to Dr. Andersson, the absence of any complaint by plaintiff concerning her "left leg, foot or ankle pain or problems" the day after the incident with Dr. Okhovat is "inconsistent of someone who suffered a traumatic injury to the left foot and ankle the day before."

4

On January 10, 2019, plaintiff presented at Forward medical clinic. Plaintiff complained of the pain she experienced during the EMG in Dr. Okhovat's office two days before. The records from Forward indicate that the treating physician found "[n]o redness, warmth, swelling or rash," and "[n]o evident deformity." The "[o]nly area of some tenderness is plantar surface of foot arch, but no redness or swelling there either."

On January 22, 2019, two weeks after the EMG, plaintiff underwent MRIs of her left foot, left ankle, and "left tibia/fibula." These MRIs showed plaintiff suffered from "mild Achilles tendinitis, a mild sprain of the superficial and deep fibers of the deltoid ligament complex and mild chronic sprain of the anterior talofibular ligament." According to Dr. Andersson, "none of these conditions could have been caused by the incident alleged by the plaintiff. The Achilles tendon connects the calf muscle in the back of the leg to the heel bone. Achilles tendonitis is a chronic condition caused by overuse. It is common in athletes such as runners. It is highly unlikely that it could have been caused by a single, inward twisting motion as alleged by [plaintiff]. The deltoid or medial ligament is a band that connects the lower leg bone (tibia) to the inner side of the ankle. It is a strong structure. Traumatic injuries to this ligament almost always occur when the ankle is twisted forcefully in an outward direction, not in an inward direction as alleged in this instance. The anterior[ ]fibular ligament is located at the lateral aspect of the ankle and connects the fibula to the talus of the ankle. The mild chronic sprain of this ligament as described in the MRI of January 22, 2019 means that this condition was the result of a recurring giving way of the lateral side of the ankle and repeated

5

ankle sprains. Such a condition develops over an extended period of time, and is not the result of a single incident."

Dr. Andersson reviewed additional records of consultations and examinations with various medical professionals occurring after plaintiff's January 2019 MRIs. Although some of these records refer to plaintiff's complaints of left leg, foot, and ankle pain or swelling, none indicate a diagnosis of CRPS or attribute her pain or swelling to Dr. Okhovat's conduct.

On April 10, 2019, further MRIs were conducted of plaintiff's left foot and ankle. The MRI of the left foot was described as "unremarkable, showing no stress fractures, no Freiberg infractions, no soft tissue masses and everything intact." The MRI of her left ankle, like the previous MRI on January 22, 2019, indicated "mild Achilles tendinitis, mild sprain of the superficial and deep fibers of the deltoid ligament complex and minimal to mild chronic sprain of the anterior talofibular ligament." Another MRI of plaintiff's left foot, conducted on May 17, 2019, "was normal without any pathology noted."

Dr. Andersson further noted that the injuries allegedly "caused by Dr. Okhovat are subjective in nature, not confirmed by objective findings, are contradicted by [plaintiff's] physical examinations, [and] are inconsistent and fluctuate." Moreover, "there is also no evidence of wasting or lost reflexes to [plaintiff's] lower extremities, which is inconsistent with all of her complaints." Her complaints, he explained, "demonstrably have a psychogenic component."

As to plaintiff's claim that she has developed CRPS as a result of Dr. Okhovat's conduct, Dr. Andersson concluded that, "the medical records demonstrate to a reasonable degree of medical probability plaintiff does not suffer from CRPS to her

left leg, ankle and foot." According to Dr. Andersson, "CRPS is a diagnosis of exclusion, meaning no other alternative diagnosis can explain the patient's symptoms. CRPS is diagnosed using the very stringent Budapest Criteria. Under this criterion, the patient must have at least [two] signs and [three] symptoms from [four] categories. The [four] categories are sensory . . . , vasomotor . . . , sudomotor . . . , and motor/trophic . . . ." Dr. Andersson explained that plaintiff's medical records do not indicate that any medical provider had applied these criteria, and plaintiff "has only ever complained of symptoms from one category (motor) and these symptoms of weakness and restricted range of motion were entirely subjective (without objective evidence to corroborate[,] such as wasting or reflex abnormalities)."

Dr. Andersson concluded that "to a reasonable degree of medical probability, nothing Dr. Okhovat did or did not do caused or contributed to the plaintiff's alleged injuries, including but not limited to, her alleged problem with CRPS of the left foot, ankle and leg."

### B.     *Plaintiff's Opposition to Summary Judgment*

Plaintiff, still acting in propria persona, filed opposition to the motion for summary judgment supported by her declaration and the declarations of Steve Frlekin, Janet Johnson, Curtis Johnson, and Andrew Portenstein. Plaintiff did not file any objections to Dr. Andersson's declaration.[1]

_____

[1] As the trial court observed, plaintiff stated objections in her separate statement of disputed material facts. The court ruled that it would not rule on the objections because objections made in opposition to a motion for summary judgment must

7

In her declaration, plaintiff stated that she "can pro[ve] that Dr[.] Okhovat did force her left foot and ankle inward and he did say 'opps [*sic*] I didn't mean to do that.'" Plaintiff states that Dr. Andersson's declaration and the medical records defendants rely on do not refer to her left foot and ankle, and that she will obtain declarations from doctors who will discuss the injury to her left foot and ankle.

Frlekin's declaration states that on January 8, 2019, he drove plaintiff to Dr. Okhovat's office and was in the room with plaintiff and Dr. Okhovat during the EMG test. Okhovat tested plaintiff's right leg and began to test the left leg. As he "reached the lower part of [plaintiff's] leg, at the ankle area, he asked [plaintiff] to move her left foot toward the right. [Plaintiff] moved her foot. Dr. Okhovat asked, 'Is that as far as you can move it?' [Plaintiff] said, 'Yes.' Dr. Okhovat, without saying anything, then took hold of [plaintiff's] foot and abruptly and forcefully pushed her foot inward to the right. Instantly, [Frlekin] heard a large 'POP' and [plaintiff] SCREAM[ED] with tears flowing. Dr. Okhovat said, 'Oh! I didn't mean to do that!'" (Boldface omitted.)

Frlekin further states that Dr. Okhovat asked plaintiff if he should continue with the test, and plaintiff responded, "'Yes, I just want it over with?'" Dr. Okhovat then "left the room and

_____

be filed separately, not made in the separate statement. (See *Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 9.) The objections were also improper, the court stated, because they were objections to defendants' material facts, not to particular evidence. On appeal, plaintiff does not assert that the court should have ruled on and sustained her objections.

8

never came back." After the test, plaintiff "was unable to stand" or put pressure on her left foot. Frlekin then took plaintiff to a hospital emergency room.

Janet Johnson and Curtis Johnson are plaintiff's mother and stepfather. According to their declarations, plaintiff has had surgery on her right leg on four occasions and two surgeries on her back. During a visit in December 2018, plaintiff's mother observed plaintiff walking and recalled that plaintiff's left side was not injured at that time. Plaintiff's mother and stepfather saw plaintiff again in 2020, and observed that "she was not doing well" and "could not walk on her left foot." The injury to plaintiff's left foot, they conclude, happened in 2019, between the two visits.

Andrew Portenstein states that he took plaintiff to the hospital and doctor appointments "[a]s of March 21, 2016, and other dates in question." On one occasion, plaintiff tripped and fell in a parking lot on the way to a doctor's appointment.

On June 29, 2021—the date set for the hearing on the defendants' motion—the court granted plaintiff's request for a continuance to allow her to submit further declarations in support of her opposition.

On October 6, 2021, plaintiff filed a further opposition. She submitted her supplemental declaration, attaching as exhibits: a letter from Leonora Fihman, DPM; certain documents that appear to have been prepared by or for Vikram Singh, M.D., and Eric Wee, DPM; and an unverified statement by Jonathan Frank, M.D.

Dr. Fihman, in a letter not signed under penalty of perjury, described plaintiff as having symptoms "consistent with complex regional pain syndrome." Dr. Fihman does not opine on whether

9

Dr. Okhovat breached a standard of care or whether his conduct caused any injury to plaintiff or the pain plaintiff suffers.

The documents from Dr. Singh's office recite that plaintiff had automobile accidents in 2016 and 2018 and that she underwent an EMG/nerve conduction study on January 18, 2019. Plaintiff reported to Dr. Singh that, "during the study, . . . her left ankle was injured and she has had increasing pain in her left ankle since then. That is the second reason why she is unable to ambulate because of the pain in her left ankle and requiring her to use [a] scooter." Under the heading, "medical causation" (boldface and capitalization omitted), Dr. Singh states that "the patient's signs and symptoms and the diagnostic findings were caused by the accident suffered by the patient." The report, which is not signed under penalty of perjury, does not include any opinion that Dr. Okhovat's conduct is a cause of plaintiff's condition.

Plaintiff also included a progress note, dated April 1, 2019, on letterhead of Jonathan Frank, M.D. The unsigned report refers to the automobile accident that occurred in February 2018, and does not mention the incident with Dr. Okhovat. The documents purported to be from Dr. Wee do not include any indication of what might have caused any problems with plaintiff's left leg or ankle. The Dr. Frank and Dr. Wee documents are not signed under penalty of perjury.

## C. *Court's Ruling on the Motion*

On October 14, 2021, defendants filed an objection to Dr. Fihman's statement on the grounds, among others, that it lacks foundation and was not signed under penalty of perjury.

On October 20, 2021, the court heard the motion for summary judgment. The court sustained the defendants'

10

objection to Dr. Fihman's statement and granted the motion for summary judgment. The court determined that the defendants had met their burden of demonstrating that Dr. Okhovat did not breach the applicable standard of care, and did not cause or contribute to plaintiff's injuries, and plaintiff had failed to meet her burden of showing the existence of a triable issue as to either element.

On November 3, 2021, plaintiff filed a motion for reconsideration, which the court denied on March 10, 2022.

On March 23, 2022, the court entered judgment in favor of defendants. Counsel for defendants served notice of entry of the judgment on March 29, 2022. Plaintiff filed a notice of appeal on May 23, 2022.[2]

## DISCUSSION

### A. *Summary Judgment Standards*

A trial court properly grants summary judgment when the papers submitted establish that no triable issue of material fact exists, and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the trial court's decision de novo, liberally construing a plaintiff's evidence while strictly scrutinizing the moving defendant's showing.

---

[2] The notice of appeal states that the appeal is taken from a judgment or order entered on March 10, 2022—the date of the order denying plaintiff's motion for reconsideration. An order denying a motion for reconsideration, however, is not appealable. (Code Civ. Proc., § 1008, subd. (g); *Mack v. All Counties Trustee Services, Inc.* (2018) 26 Cal.App.5th 935, 937, fn. 1.) We construe the notice of appeal as taken from the judgment entered on March 23, 2022. (See *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18.)

(*Kolodge v. Boyd* (2001) 88 Cal.App.4th 349, 355–356.)  We
consider all evidence offered by the parties in connection with
the motion (except that which the court properly excluded) and
the inferences the evidence reasonably supports.  (*Aguilar v.
Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*);
*Artiglio v. Corning Inc*. (1998) 18 Cal.4th 604, 612.)

Defendants meet their burden of showing that a cause
of action has no merit if they show that "one or more elements
of the cause of action, . . . cannot be established, or that there
is a complete defense to the cause of action."  (Code Civ. Proc.,
§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849.)  Once
a defendant has carried that burden, the burden shifts to the
plaintiff "to show that a triable issue of one or more material
facts exists as to that cause of action."  (Code Civ. Proc., § 437c,
subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849.)  "There is a
triable issue of material fact if, and only if, the evidence would
allow a reasonable trier of fact to find the underlying fact in
favor of the party opposing the motion in accordance with the
applicable standard of proof" at trial.  (*Aguilar*, *supra*, 25 Cal.4th
at p. 850; accord, *Lugtu v. California Highway Patrol* (2001)
26 Cal.4th 703, 722.)  The plaintiff may not rely upon the
allegations in the pleadings, but must set forth specific facts.
(§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849.)

### B.   *Analysis*

Plaintiff's claim of medical malpractice required her
to establish four elements:  (1) the defendants' duty to use
the skill, prudence, and diligence that other members of the
profession commonly possess and exercise, (2) a breach of the
duty, (3) a proximate causal connection between the alleged
negligent conduct and the injury, and (4) resulting loss or

damage.  (*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 968; *Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305.) Here, defendants asserted that there is no triable issue of material fact as to the second and third elements:  breach of duty and causation.  Because, as discussed below, we conclude that summary judgment is proper based on the issue of causation, we do not reach the breach of duty issue.

When, as here, the determination of causation in a medical malpractice case involves matters beyond a layperson's knowledge, causation "must be proven within a reasonable medical probability based upon competent expert testimony." (*Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402.)  When a medical malpractice defendant supports a motion for summary judgment with an expert declaration, the defendant " ' "is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." ' " (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 123.)

Defendants supported their motion for summary judgment as to causation with Dr. Andersson's declaration, to which plaintiff asserted no objection.  Dr. Andersson's opinion that Dr. Okhovat's conduct did not cause or contribute to the injuries of which plaintiff complains rests on facts set forth in plaintiff's medical records or, based on Dr. Andersson's unchallenged expertise, inferred from the records.  According to Dr. Andersson, the EMG study itself showed "normal test results," which could not have been obtained if plaintiff suffered the trauma she alleges.  An X-ray of plaintiff's ankle obtained the same day of the EMG study was "normal" and the emergency room records provide no indication of an injury to plaintiff's left ankle or foot.  Dr. Andersson also noted that plaintiff's apparent failure

to make any complaint about her left leg or ankle the following day at a medical clinic is "inconsistent of someone who suffered a traumatic injury to the left foot and ankle the day before." Subsequent MRIs revealed, at most, only conditions that would be caused by events other than Dr. Okhovat's conduct. Dr. Andersson explained that mild Achilles tendonitis, for example, is a chronic condition, common to athletes and runners, caused by overuse, not a single, inward twisting motion as alleged by plaintiff. Nor is there any evidence in plaintiff's extensive medical records "of wasting or lost reflexes to [plaintiff's] lower extremities," which Dr. Andersson explained "is inconsistent with all of her complaints." Lastly, Dr. Andersson pointed to the absence of any diagnosis in any medical record that plaintiff suffers from CRPS in her left leg, foot, or ankle.

Dr. Andersson's declaration provides "a reasoned explanation of why the underlying facts lead to [his] ultimate conclusion" that Dr. Okhovat's conduct during the EMG study did not cause the injury plaintiff alleges. (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510.) The declaration is thus sufficient to support the defendants' initial summary judgment burden of showing that plaintiff cannot establish the element of causation. Plaintiff was therefore required to establish by expert declarations that a triable issue of material fact exists as to the issue of causation.

Plaintiff has failed to do so. The court sustained the defendants' objections to the statement plaintiff submitted from Dr. Fihman based on lack of foundation and Dr. Fihman's failure to verify the statements under penalty of perjury. Plaintiff does not challenge this ruling on appeal. As the trial court noted, even if Dr. Fihman's statement was admissible, the statement

14

provides no evidence to support plaintiff's "case that defendants caused plaintiff's injuries." Plaintiff offered no other evidence sufficient to create a triable issue as to causation.

In her opening brief on appeal, plaintiff argues that she "had a 'witness in the room' during the [EMG] test[,] so there is proof of wrongdoing by [Dr.] Okhovat." (Capitalization omitted.) She is referring to Frlekin, who was present during the EMG study and stated that Dr. Okhovat "abruptly and forcefully pushed [plaintiff's] foot inward to the right." Frlekin "heard a large 'POP,' " plaintiff screamed and cried, and Dr. Okhovat said, " 'Oh! I didn't mean to do that!' " (Boldface omitted.) Even if Frlekin's declaration was sufficient to show that Dr. Okhovat breached a duty of care, it does not create a triable issue as to whether Dr. Okhovat's actions caused the ongoing pain, tendonitis, and CRPS for which plaintiff seeks relief.

Under a heading in plaintiff's opening brief that reads, "defendant/respondent Okhovat caused" (boldface & capitalization omitted), plaintiff points to evidence of the injuries she claims Dr. Okhovat caused. These include: "Achilles tendinitis ligament," "mild sprain of the superficial deep fibers of the deltoid ligament complex ligament," "mild chronic sprain of the anterior talofibular ligaments," and "a slightly hypertrophied peroneal tubercle of the calcaneus." (Capitalization omitted.) Even if plaintiff suffers from these ailments, however, she has failed to produce admissible evidence that Dr. Okhovat caused any of them.

For all the foregoing reasons, defendants have shown that there is no triable issue of material fact as to the element of causation and that they are entitled to judgment as a matter of law.

15

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


                                        ROTHSCHILD, P. J.

We concur:



CHANEY, J.



BENDIX, J.

16